IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRYCE E. MASTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-01045-CV-W-GAF |
| | ) |
| CITY OF INDEPENDENCE, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT RUNNELS' MOTION IN LIMINE

COMES NOW Defendant Timothy Runnels, by and through his attorneys, Keith A. Cutler and James W. Tippin, and hereby moves this Court to prohibit Plaintiff, his witnesses, experts, and counsel from mentioning, suggesting, or making reference to, within the hearing of the jury during trial, any of the following matters:

A. The reasons for Defendant Runnels' separation from his previous employment with the Kansas City Police Department (KCPD);

B. Any IA Complaints, Non-IA Complaints, Reprimands, Shift-Level Discipline, etc. of Defendant Runnels during his previous employment with KCPD;

C. Any crimes/offenses with which Defendant Runnels was charged or indicted on, but never convicted of;

D. The lawfulness and/or reasonableness of the September 14, 2014 traffic stop of Plaintiff;

E. That prior to the September 14, 2014 traffic stop, the Independence Police Department, or any officers within the IPD, were targeting Plaintiff;

F. That Defendant Runnels and/or Sergeant Blackmore did not perform CPR on Plaintiff nor utilize an AED, and whether or not Defendant Runnels' patrol car contained an AED;

G. What Officer Runnels did or did not tell Sergeant Blackmore when Sergeant Blackmore arrived on the scene;

H. Any reference to the taser exposure to Plaintiff being 23 seconds;

I. That following the tasing of Plaintiff, Defendant Runnels had a look on his face like he was proud of himself, and/or that he was not concerned;

J. Opinions/recommendations of any IPD officers inconsistent with the official finding of the Department regarding Defendant Runnels' alleged violation of IPD policy;

K. That Plaintiff was "dead" and was brought back to life;

L. The effect this incident has had on Plaintiff's parents/family; and

M. That Defendant Runnels drove by or near Plaintiff's house at some point after September 14, 2014.

The reasons in support of this Motion are more fully set out in the Suggestions attached hereto and incorporated herein by reference.

    s/ Keith A. Cutler
KEITH A. CUTLER    #36370
21 West Gregory Boulevard
Kansas City, Missouri 64114-1105
(816) 471-8575
(816) 421-0243 - FAX
kcutler@tippinlawfirm.com

ATTORNEY FOR DEFENDANT
  TIMOTHY RUNNELS

# SUGGESTIONS IN SUPPORT OF
# DEFENDANT RUNNELS' MOTION IN LIMINE

OVERVIEW

This is a federal civil rights lawsuit under 42 USC §1983. During a traffic stop on September 14, 2014, Plaintiff was uncooperative with the arresting police officer, Defendant Timothy Runnels. Officer Runnels tased Plaintiff and shortly thereafter dropped him face-first onto the ground. At some point, Plaintiff went into cardiac arrest and was taken by ambulance to the hospital. Plaintiff's claimed injuries include dental injuries, cardiac arrest, and an anoxic brain injury. This matter is set for a jury trial to begin December 10, 2018.

PLAINTIFF'S CLAIMS

Plaintiff originally filed this civil lawsuit against former Officer Timothy Runnels, Sergeant Roger Blackmore, their then-employer the City of Independence,[1] and Axon Enterprises *(f/k/a TASER International)*, the manufacturer of the taser. All Defendants have since been dismissed except Defendant Runnels. Based on said dismissals, and on summary judgment rulings by the Court, the remaining claims to be tried are Plaintiff's allegations that Defendant Runnels violated Plaintiff's civil rights in (1) using the taser on Plaintiff; (2) prolonging the length of the taser exposure, and (3) dropping Plaintiff to the ground face-first. The lawsuit seeks both compensatory and punitive damages.

---

[1] The Independence Police Department is a department of the City of Independence. As such, Independence Police Officers are actually employed by the City of Independence. Timothy Runnels is no longer employed with the City of Independence.

SUBJECT AREAS AT ISSUE

**A.    The reason(s) for Defendant Runnels' separation from his previous employment with the Kansas City Police Department.**

Plaintiff's First Amended Complaint *(Doc. 82)* contained a claim *(First Claim for Relief, a/k/a Count I)* against the City of Independence for negligence and recklessness in "selecting, retaining, and assigning officers with deliberate indifference to those officers' demonstrable propensities for excessive force, false arrest, and other misconduct." (¶71g).   During discovery, personnel information was disclosed and exchanged regarding Defendant Runnels' separation from his previous employment with the Kansas City Police Department, and the subsequent decision of the Independence Police Department to hire Defendant Runnels.

The City of Independence was voluntarily dismissed from this lawsuit *(Doc. 232)*, thereby extinguishing Plaintiff's claim for negligent hiring and/or retention of Officer Runnels. Inasmuch as the claim for negligent hiring and/or retention of Officer Runnels has been dismissed, the reasons for Officer Runnels' separation from Kansas City Police Department are not relevant to any of the remaining issues in this lawsuit.   To the extent Plaintiff may claim that Defendant Runnels' resignation from KCPD, and/or any reasons therefor, bear on his character or propensity to act in the manner alleged in the case at bar, the Eighth Circuit has determined that a person's resignation from their employment, and the reasons therefor, "is not the type of 'bad act' evidence which is admissible under the rules of evidence," and "is the type of propensity evidence that [Rule 404(b)] prohibits."   Glaze v. Childs, 861 F.3d 724, 726 (8th Cir. 2017).    Therefore, any evidence of the reasons for Officer Runnels' separation from employment with KCPD should be excluded from trial.

### B. Any IA Complaints, Non-IA Complaints, Reprimands, Shift-Level Discipline, etc. of Defendant Runnels while at KCPD.

Defendant Runnels left the employment of KCPD in 2010, four (4) years before the traffic stop of Plaintiff in September 2014 as an Independence police officer. While at KCPD, there was never any discipline imposed on Defendant Runnels. To the extent Defendant Runnels was the subject of any *complaints* or Internal Affairs *investigations* while at KCPD, there was never any finding that Officer Runnels used excessive force or violated any department policy regarding the use of force. Therefore, no such complaint or investigation would be relevant to, or have any probative value with respect to, the issues in this lawsuit, i.e., whether or not Officer Runnels used excessive force during his traffic stop of Plaintiff.

Plaintiff may attempt to argue that prior complaints against Officer Runnels are relevant and admissible to show a pattern of conduct on the part of Officer Runnels. However, Federal Rule of Evidence 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The case law that has developed from interpretation of FRE 404(b)(1) provides for a four- (4-) part test. To overcome the exclusion established in FRE 404(b)(1), the proponent of the evidence must show that the prior act sought to be introduced:

(1) is relevant to a material issue in the lawsuit;

(2) is similar in kind, and close in time, to the act at issue in the lawsuit;

(3) is established by a preponderance of the evidence; and

(4) is not such that its prejudicial effect outweighs its probative value.

See United States v. Cook, 454 F.3d 938 (8th Cir. 2006).

It is clear that any prior complaints and investigations involving Defendant Runnels during his previous employment at KCPD would not pass *any* prong of the four- (4-) part test set forth in the case law as illustrated by Cook. The tasing of Plaintiff in this case was the first and only time Officer Runnels ever tased anyone, and was the first time he had ever even deployed his taser in the field, with either KCPD or IPD. As such, there are no other substantially similar instances involving Officer Runnels with which to compare his tasing of Plaintiff. As mentioned above, there were no findings of excessive force against Officer Runnels while he was at KCPD. Allowing evidence of any other *dissimilar* conduct of Officer Runnels, wholly unrelated and unconnected in nature to this September 14, 2014 tasing of Plaintiff, would be unfairly and unduly prejudicial to Defendant Runnels. Therefore, any such evidence should be excluded at trial.

**C.    Any crimes/offenses with which Defendant Runnels was charged or indicted on, but never convicted of;**

As a result of his traffic stop of Plaintiff in September 14, 2014, Defendant Runnels was indicted and charged in federal court on four (4) Counts: (I) use of the taser, (II) dropping Plaintiff to the ground, (III) obstruction of justice in submitting a false and misleading report; and (IV) obstruction of justice in making false and misleading statements to investigators. The only Count on which Defendant Runnels was found guilty was Count II; all other Counts were dismissed.

Several times in his Suggestions in Opposition *(Doc. 218)* to Defendant Runnels' Motion for Summary Judgment, Plaintiff made such statements as "Runnels is not a credible source,

however, as he has been determined to have lied repeatedly about facts material to the incident, and was criminally charged for doing so by the United States government."

Federal Rule of Evidence 609 only allows admission of evidence of actual ***convictions***, not allegations, charges, or indictments. Admission into evidence of anything with which Defendant Runnels may have been charged, but was subsequently dismissed, would not only be violative of FRE 609, but would also be exceedingly more prejudicial than probative. Therefore, any such evidence, reference, or inference thereabout should be excluded from evidence at trial.

### D. The lawfulness and/or reasonableness of the September 14, 2014 traffic stop of Plaintiff

In its October 24, 2018 Order *(Doc. 237)*, this Court already determined as a matter of law that Defendant Runnels' traffic stop of Plaintiff "did not violate the Fourth Amendment prohibition on unreasonable seizures," and the Court granted summary judgment in favor of Defendant Runnels on that claim. As such, there should be no evidence about, or reference to, the legality or reasonableness of the traffic stop, whether there was probable cause, etc.

### E. That prior to the September 14, 2014 traffic stop, the Independence Police Department, or any officers within the IPD, were targeting Plaintiff

During the pendency of this case, there have been allegations that Plaintiff was pulled over on September 14, 2014 because Officer Runnels in particular, and the Independence Police Department in general, may have been targeting Plaintiff and/or the car he was driving. This Court has already determined that the traffic stop was lawful *(Doc. 237)*, so any evidence,

argument, or inference that Plaintiff was pulled over because he was being targeted should be excluded. In addition, although there have been allegations, suggestions, and even "hunches," Plaintiff and his parents have all testified under oath that they have no evidence that Plaintiff was being targeted when he was pulled over. *(Deposition of Plaintiff, 43:2-22; Deposition of Matt Masters 131:8 – 132:6); Deposition of Stacy Masters 122:22 – 124:2).* Therefore, the allowance of such an argument or inference would be unduly prejudicial to Defendant, and should therefore be excluded at trial.

**F.     That Defendant Runnels and/or Sergeant Blackmore did not perform CPR on Plaintiff nor utilize an AED, and whether or not Defendant Runnels' patrol car contained an AED.**

In its October 24, 2018 Order *(Doc. 237)*, this Court already determined as a matter of law that neither Defendant Runnels nor Sergeant Blackmore had a duty to perform CPR on Plaintiff, nor to utilize an AED on Plaintiff. The Court granted summary judgment in favor of both Defendant Runnels and Sergeant Blackmore on that claim. As such, there should be no evidence about, or reference to, (1) whether or not Defendant Runnels and/or Sergeant Blackmore performed CPR, or could have, should have, etc.; (2) whether or not Defendant Runnels and/or Sergeant Blackmore utilized an AED, or could have, should have, etc.; and (3) whether or not there was an AED in Defendant Runnels' patrol car.

**G.     What Officer Runnels did or did not tell Sergeant Blackmore when Sergeant Blackmore arrived on the scene.**

Plaintiff's First Amended Complaint *(Doc. 82)* contained a claim *(Third Claim for Relief, a/k/a Count III)* against Sgt. Roger Blackmore and Defendant Runnels for medical indifference –

failure to provide medical treatment to Plaintiff. Part of Sergeant Blackmore's defense to this claim was that, when he arrived at the scene after the tasing had occurred, he was not given accurate or sufficient information by Defendant Runnels with which to assess Plaintiff's condition and the need for medical treatment. In that context, conversations between Defendant Runnels and Sergeant Blackmore occurring after Plaintiff had already been tased were relevant to the then-pending medical indifference claim.

In its October 24, 2018 Order *(Doc. 237)*, this Court determined as a matter of law that neither Defendant Runnels nor Sergeant Blackmore had a duty to perform CPR on Plaintiff, nor to utilize an AED on Plaintiff. The Court granted summary judgment in favor of both Defendant Runnels and Sergeant Blackmore on the medical indifference claim.

Inasmuch as the medical indifference claim has already been adjudicated, whatever Officer Runnels told Sergeant Blackmore upon Sergeant Blackmore's arrival on the scene is now irrelevant to any of the remaining issues in the lawsuit. The remaining issues in this lawsuit are whether Defendant Runnels used excessive force in deploying his taser, in deploying his taser for 20 seconds, and in dropping Plaintiff to the ground. Whether the information that Officer Runnels gave to Sergeant Blackmore upon his arrival was sufficient or sufficiently detailed is irrelevant to these remaining issues in this case, and will invariably *(and impermissibly)* lead back to the issue of medical indifference, which has already been adjudicated by this Court. Therefore, whatever Officer Runnels may or may not have told Sergeant Blackmore once Sergeant Blackmore arrived at the scene should be excluded from evidence at trial.

**H.     Any reference to the taser exposure to Plaintiff being 23 seconds**

The taser data download from Officer Runnels' taser device indicates that the taser discharge to Plaintiff lasted 20 seconds. *(Doc. 218-19)* Plaintiff's own experts have testified that the taser discharge lasted 20 seconds. (*Doc. 178-2 - Deposition of Richard Guilbault, 87:13-19; Doc. 178-9 - Deposition of Andrew Dennis, D.O.; Doc. 230-1 - Deposition of Andrew Dennis, D.O. 249:8-13; 258:1-14*). On page 5 of its October 24, 2018 Order *(Doc. 237)*, this Court determined in its findings of fact that the taser discharge lasted 20 seconds. All of the evidence in this case indicates that taser discharge lasted 20 seconds. In response to Defendant Runnels' Statement of Uncontroverted Statement of Fact Number 37, Plaintiff stated: "Timing the audible clicks on the video recording, however, suggest that the discharge lasted as long as 23 seconds." *(Doc. 218)* Plaintiff, however, failed to identify any particular materials in the record which support a 23-second discharge, except this subjective offering that audible clicks "suggest" that the discharge lasted "as long as" 23 seconds.

With only his subjective timing and interpretation of "audible clicks" on the dash cam video, Plaintiff should not be allowed to confuse the jury by contradicting all of the evidence in this case, including the sworn testimony of two (2) of his own experts, that the taser discharge lasted 20 seconds, and not 23 seconds.


**I.     That following the tasing of Plaintiff, Defendant Runnels had a look on his face like he was proud of himself, and was not concerned;**

On the day of the traffic stop at issue in this case, Plaintiff's parents arrived at the scene while Plaintiff, Defendant Runnels, and other IPD officers were still there. In her deposition, Plaintiff's mother, Stacy Masters, testified as follows:

> Q. What was it about that person's body language that suggested he was the one who deployed the Taser?
>
> A. Just my opinion, but he seemed very proud of himself. And he had a smirk on his face. And he was, like, leaning back on his car, and his -- there wasn't any concern. There was, like, a level of concern with the other officers and the other people that responded to the scene, but it was completely absent with Timothy Runnels.
>
> Deposition of Stacy Masters 49:3-12

This is clearly inadmissible opinion testimony, and is unduly and unfairly prejudicial to Defendant Runnels. This trial will probably be emotional for Plaintiff's parents, such that they may be tempted to make statements like the above during their testimony. Any such statements about their perception of Defendant Runnels should not only be excluded from trial, but should be warned against prior to the start of trial.

**J. Opinions/recommendations of any IPD officers inconsistent with the official finding of the Department regarding Defendant Runnels' alleged violation of IPD policy**

In the Independence Police Department, the Internal Affairs process begins with a fact-finding investigation. Once the facts are gathered, the matter is sent to a sergeant to make a recommendation on whether there has been a violation of policy, and if so, what manner of discipline is warranted. The sergeant then sends his recommendation up to a captain. After reviewing the sergeant's recommendation, the captain makes his own recommendation and sends it up to a major. The major makes his recommendation and sends it up to the deputy chief, who reviews it, makes his own recommendation, and ultimately sends everything to the Chief of Police. The Chief of Police reviews the recommendations of the sergeant, captain, major, and

deputy chief, and thereafter the Chief makes the final determination on whether there has been a violation of Department policy, and if so, what manner of discipline is warranted. In simpler terms, the sergeant, captain, major, and deputy chief who review the matter all make *recommendations*; the Chief of Police, however, makes the official *final determination* on behalf of the Department.

In this case, to the extent any sergeant, captain, major, or deputy chief made any recommendations that are at odds with or are inconsistent with the *official* final determination of the Department as rendered by the Chief of Police, such recommendations should be excluded from evidence. Only the official determination by the Independence Police Department – and not the various opinions and recommendations of others along the chain – should be admissible in evidence.

**K.     That Plaintiff was "dead" and was brought back to life**

At Defendant Runnels' sentencing hearing, Plaintiff's father, Matt Masters, was allowed to address the Court. During his presentation, Matt Masters made the following statements:

"There's been no grieving process for us. As disturbing and harsh as that may sound, Bryce died. He was dead. He was resuscitated."  *(Transcript, 103:11-13)*

"The fact of the matter is that Bryce's brain injury, he's -- he's a fraction of himself. He was clinically dead. We've experienced hell for the last 20 minutes -- 20 months of our lives." *(Transcript 107:24 – 108:2)*

"I've cut a lot of this out of here, but we've gone through hell. And I want you to not forget that he was dead and that he has a brain injury, and this is going to be with us the rest of our lives." *(Transcript 110:18-21)*

There is no evidence in the medical records to suggest that Plaintiff was ever "dead" – clinically or otherwise. His heart and breathing did stop, and the paramedics on the scene were able to restore his heartbeat and respiration. But Plaintiff was never declared dead by any of the medical professionals in this case. For Plaintiff, Plaintiff's family, or Plaintiff's counsel to be allowed to testify, argue, or suggest that Plaintiff was "dead" would (1) be medically inaccurate and unsupported, and (2) be ***extremely and unduly*** prejudicial to Defendant. The only purpose for such an argument would be to arouse the passion of the jury and to evoke sympathy, both of which are impermissible and should not be allowed by this Court in this trial.

**L.     The effect this incident has had on Plaintiff's parents/family**

Plaintiff is 21 years old. He has brought this lawsuit as an adult. *(Plaintiff's First Amended Complaint, ¶4 – Doc. 82)* His parents are not parties to this lawsuit, nor do they have any claim for damages pending in this case.

At Defendant Runnels' sentencing hearing, Plaintiff's father, Matt Masters, was allowed to address the Court. During his presentation, Matt Masters made the following statements:

> "First, I would like to sincerely thank you for allowing me to speak to you today. My desire is to help the Court to understand the trauma, the emotions, and what impact this crime has caused to not only my teenage son, but to our entire family." *(Transcript 103:7-10)*

> "His mother and I, on a less important note, have dealt with a lot of issues as well. Relationship problems directly related to the stress of this incident, loss of sleep, bouts of depression, professional awkwardness, embarrassment, lost wages. Being a police officer, it's been very difficult to deal with this." *(Transcript 108:20-25)*

> "We watched the ventilator breathe for our son. We watched his involuntary shivering and his body spasms as he lay freezing on the hospital bed. We asked his little sister, his brother, his grandparents, his aunts and uncles and all the people in this room to pray for the best but prepare for the worst and that he might never be with us again. We cried and prayed to God to spare Bryce and bring him back to us." *(Transcript 109:16-22)*

> "Your Honor, our family has been in a continual state of sadness since this day. It's like we're trying to figure out how to make it better, but it won't just -- it just won't go away." *(Transcript 110:14-17)*

While this incident has undoubtedly been impactful to Plaintiff's parents and his family, they are not parties to this lawsuit, and there is no claim against Defendant in this lawsuit for the damages – mentally, emotionally, or financially – allegedly sustained by Plaintiff's parents or by Plaintiff's family. While Plaintiff's parents can talk about their observations of how this incident has impacted *Plaintiff*, they should be prohibited from offering any evidence or testimony about how this incident has impacted *them* or their family.

### M. That Defendant Runnels drove by or near Plaintiff's house at some point after September 14, 2014

During his deposition, Plaintiff's father testified about an instance where Plaintiff's parents allegedly saw Defendant Runnels drive past their house some time in March 2015, approximately six (6) months after the September 14, 2014 traffic stop which is the subject of this lawsuit. Irrespective of whether that actually happened, any evidence or testimony thereabout is completely irrelevant to the issues in this lawsuit – i.e., whether Officer Runnels' use of the taser and dropping Plaintiff on the ground on September 14, 2014 constituted excessive force. Any testimony about, or references to, this alleged driving incident should be excluded at trial.

CONCLUSION

Based on the foregoing factual and legal analysis, Defendant Runnels prays that the Court prohibit Plaintiff, his witnesses, experts, and counsel from mentioning, suggesting, or making reference to, within the hearing of the jury during trial, any of the above-enumerated matters, and for such other relief as the Court deems just and proper.

Respectfully submitted,

  s/ Keith A. Cutler
KEITH A. CUTLER

# CERTIFICATE OF SERVICE

I do hereby certify that, on the 15th day of November 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Kirk R. Presley, Esq. | kirk@presleyandpresley.com |
| Matthew A. McCoy | matthew@presleyandpresley.com |
| Daniel J. Haus, Esq. | dhaus@hauslawfirm.com |
| John C. Burton, Esq. | jb@johnburtonlaw.com |

I further certify that, on the above date, I mailed the above and foregoing document first class, postage prepaid, to the following non-participants in the CM/ECF system:

None

    s/ Keith A. Cutler
KEITH A. CUTLER