# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BRYCE MASTERS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 4:16-cv-01045 |
| ) | |
| CITY OF INDEPENDENCE, et al. ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL

COMES NOW Plaintiff, by and through his attorneys of record, and hereby submits his Suggestions in Opposition to Defendant Timothy Runnels' Motion for New Trial.

### I. Background

This is a §1983 claim that was tried on claims that Defendant used excessive force in continuously deploying his taser into Plaintiff's chest for 4 times the normal duration of current and in throwing Plaintiff face first while handcuffed onto the concrete. After a weeklong trial, the jury found Defendant liable for using excessive force in the misuse of the taser and for throwing Plaintiff face first onto the concrete. The jury awarded compensatory damages of $5,000,000 and punitive damages of $500,000.00 for the misuse of the taser and compensatory damage of $50,000.00 and punitive damages of $1,000,000.00 for throwing Plaintiff face first and handcuffed onto the concrete.

Defendant's motion sets forth several grounds purportedly justifying a new trial. The first allegation being that the jury's verdict on the misuse of the taser was against the weight of the evidence. The second allegation focuses on the admissibility of the opinions of Michael Dreiling, Plaintiff's vocational rehabilitation expert, and by

1

extension the opinions of Dr. Tabak, Plaintiff's economist.  Defendant asserts, as he did through a denied *Daubert* challenge, that Mr. Dreiling's opinions lack foundation as they are unsupported by a medical evidence. Defendant has also claimed that the jury's punitive damage verdict with respect to the Defendant throwing Plaintiff onto the concrete was excessive and violates due process as the ratio of punitive to compensatory damages is excessive.  Defendant finally challenges the jury's award of compensatory damages on the misuse of the taser claiming that the award is excessive and unsupported by evidence at trial. Defendant's challenges to the jury's award of punitive damages for the drop and compensatory damages for the tasing into cardiac arrest, are the subject of Defendant's Motion for Remittur and Plaintiff incorporates his suggestions in opposition to that Motion by reference here.

As set forth below, Defendant's alleged grounds for a new trial are unsupported and should be denied.

> **II.     Argument**
> **a.   The Taser Verdict Was Not Against the Weight of the Evidence**

Prior to trial, Plaintiff asserted claims against Defendant for both his initial decision to deploy his taser as well as the Defendant continuously deploying the taser for twenty seconds.  However, at trial, Plaintiff chose to forgo his claim that Defendant engaged in excessive force by shooting him in the chest, against his training, with his taser. Instead, Plaintiff submitted the following conduct on his taser claim (Instr. 12):

> *First,* the defendant continued deploying taser current into plaintiff's chest for 15 seconds when arresting him; and
>
> *Second*, the force used was excessive because it was not reasonably necessary to arrest the plaintiff; and
>
> *Third*, as a direct result, the plaintiff was injured.

2

The Court then submitted Instruction No. 13, providing that:

> If you find that defendant Timothy Runnels had a reasonable belief that plaintiff Bryce Masters was actively resisting arrest as the taser was discharged, that plaintiff was failing to comply, or defendant Runnels continued the taser discharge unintentionally, your verdict must be in favor of defendant Timothy Runnels.

Defendant has focused his argument on testimony that conceivably could support his argument that the initial taser deployment was not excessive. However, this testimony is not dispositive of the claim actually submitted by Bryce.

Instead, there was absolutely no testimony that during the prolonged taser current discharge Bryce was in any way resisting Defendant. Rather, the stipulated facts establish that during the discharge, Plaintiff "did not attempt to hit kick or flee" and "complied with all commands given by Runnels." (Doc. 303, ¶¶ 39-40). In addition, the video recording of the taser discharge, entered into evidence, documents and illustrates the lack of any resistance during the discharge. These pieces of evidence are fully supportive of the jury's unanimous verdict and tracks the Court's qualified immunity instruction. The jury was entitled to credit these facts in determining whether Defendant had a reasonable belief that Plaintiff was resisting arrest or was failing to comply during the continuous discharge of the taser. As they were entitled to do in evaluating the testimony and evidence, the jury rejected any contention by Defendant that he had a reasonable belief Plaintiff was resisting or failing to comply as Defendant discharged the taser. Like the intentional nature of the continued discharge discussed below, Defendant's credibility was paramount to determining his mindset. There was ample support for the jury's rejection of Defendant's credibility given his termination for lying to other officers

3

on scene and lack of correlation between his trial testimony and what was documented in his dash cam and police reports.

Further, the jury's conclusion that Defendant intentionally continued the discharge for 15 additional seconds beyond a normal current cycle is fully supported by the evidence. Testimony from Defendant's taser training officer (Davidson) confirmed that he was informed and taught to pull and release the trigger, only administer a five second dose of current, and that holding the trigger down will continue to discharge current. (*See also* Plaintiff's Exhibit 8). Further, it was stipulated that Defendant knew how to terminate the current on the taser (Doc. 303, ¶38) but continued holding down the trigger for four times longer than recommended and four times longer than he was trained to do. Additionally, the jury's rejection of Defendant's claim that the extended discharge was unintentional was within the jury's province of judging Defendant's credibility. This rejection is proper and supported by video showing Defendant throwing Plaintiff's phone, standing over and taunting him as well as testimony that Defendant was terminated by the City of Independence for lying to his superior officers concerning his actions.

Jury verdicts are to stand and be respected "if the evidence viewed in the light most favorable to the prevailing party, is sufficient for a reasonable jury to have found for that party." *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 573 (8th Cir. 1997). Not a single expert testified that Defendant's use of the taser by shooting a 17 year old in the chest (against all training) and then prolonging the discharge of current for 4 times the amount trained to be delivered, was reasonable. Not a single officer in the parade of witnesses called by both parties, came to Defendant's defense. The Defendant's contention that he did not realize he was still depressing the trigger and delivering current

4

was soundly rejected by the jury and for good reason given the uncontroverted videotaped evidence of the deployment. The evidence at trial firmly supported the jury's verdict and the jury's decision was not against the weight of the evidence.

### b. Testimony of Michael Dreiling Was Properly Admitted

Prior to trial, Defendant filed a *Daubert* challenge concerning Mr. Dreiling's ability to offer opinions concerning Plaintiff's vocational prognosis. In addition, the Court held a pre-trial hearing in which Mr. Dreiling testified concerning his opinions and the facts and data underlying such. After full briefing and with the benefit of Mr. Dreiling's testimony at the pre-trial hearing, the Court denied Defendant's request. Defendant's current bases for challenging Mr. Dreiling's testimony are identical to those previously raised and should be denied.

#### *i. Mr. Dreiling Qualified to Offer Opinions*

As discussed in the *Daubert* briefing and at the pre-trial hearing, Mr. Dreiling is a vocational consultant with 40 years of experience in the field of vocational rehabilitation and has consistently worked with thousands of individuals in terms of how their medical conditions and disabilities impact their vocational opportunities. This includes individuals like Plaintiff who have sustained a brain injury at a young age. This knowledge and experience permits vocational consultants to consider how a given set of conditions factor into an individual's vocational prognosis. *See Hensley v. Crete Carrier Corp.*, 2017 WL 8780159 at *3 (W.D. Mo. Aug. 30, 2017). In addition, this district has determined that "Mr. Dreiling is qualified to testify how a given set of health problems impacts a person's ability to work…" *Babbs v. Block*, 2017 WL 2402792 at *8 (W.D. Mo. June 1, 2017).

### ii. *Mr. Dreiling's Opinions Were Supported by Sufficient Foundation*

The crux of Defendant's argument is that Mr. Dreiling's opinions lacked a sufficient basis and were speculative. Defendant's arguments are centered on a claim that Mr. Dreiling's opinions are not supported by a medical opinion. However, this is mistaken.

Defendant relies almost entirely on *Hartness v. Union Pac. R.R. Co.*, 2008 WL 5429638 (E.D. Ark. July 28, 2008) to support its arguments that in the absence of a doctor opining on Plaintiff's vocational capacity that Mr. Dreiling cannot offer opinions on Plaintiff's vocational capacities. However, this position is inconsistent with *Hensley v. Crete Carrier Corp.*, 2017 WL 8780159 (W.D. Mo. Aug. 30, 2017) in which this District determined that "the *Hartness* standard cannot be interpreted to require a vocational rehabilitation expert to simply parrot the Plaintiff's medical records" as "such a requirement would render the vocational rehabilitation expert moot." *Id.* at * 3.

Here, Mr. Dreiling has taken the accommodations and findings of the neuropsychological reports, coupled with the continuing cognitive and behavioral issues identified through his evaluation of Plaintiff into account in reaching his opinions concerning Plaintiff's most likely vocational outcomes and limitations. This data and opinions generated by Plaintiff's neuropsychologist were extrapolated by Mr. Dreiling into the college and workplace setting. Based on experience working with similar individuals, the documented findings in the medical reports, Plaintiff's prior scores on educational achievement testing and reports of Plaintiff's current behavioral and cognitive issues as well as actual work history, Mr. Dreiling was able to reach his opinions concerning Plaintiff's current and future vocational limitations. This is an

6

appropriate basis for a vocational expert opinion. *See J.B. by and through Bullock v. Mo. Baptist Hospital of Sullivan*, 2018 WL 398391 at *4 (E.D. Mo. Jan. 12, 2018)(finding, after a Daubert challenge, that a vocational interview, coupled with a review of medical records and educational achievement tests provided sufficient factual data and support of a vocational expert's opinion).

Mr. Dreiling's opinions were not speculation lacking any foundation. These opinions, reached based upon his extensive training, experience and knowledge, took into account the neuropsychological reports generated and the continuing symptoms experienced by Plaintiff to project the most likely vocational outcome for Plaintiff. This is permitted and mirrors the situation recognized in *Hensley* in which the vocational rehabilitation expert was permitted to opine on how the Plaintiff's current condition factored into his vocational prognosis. Requiring vocational experts to parrot medical records, rather than extrapolating such into a vocational prognosis, would render vocational experts testimony moot. *Hensley*, 2017 WL 8780159 at *8. The proper course for Defendant was to challenge Mr. Dreiling's opinions through cross-examination or the presentation of his own expert witnesses. *See Rice ex rel. Clark v. Union Pac. R. Co.*, 2012 WL 1710906 at *2 (E.D. Ark. May 15, 2012). Defendant had these opportunities and chose not to present his own expert testimony instead relying on cross-examination to challenge Mr. Dreiling's opinions.

### c. Dr. Tabak's Testimony Was Admissible

Defendant has also challenged the admissibility of Dr. Tabak's testimony concerning the present value of Plaintiff's future economic loss. As he did in his Daubert challenge, the basis for Defendant's position is that Dr. Tabak's opinions are based on the vocational opinions of Mr. Dreiling and thus are inadmissible. As outlined above and in

7

prior briefing, Mr. Dreiling's opinions are valid and admissible. As Defendant raises no other challenges to Dr. Tabak's testimony, her opinions were properly admitted.

### d. Punitive Damages Awarded For Throwing Plaintiff Face First and Handcuffed Were Not Clearly Excessive

In both this and his Motion for Remittur, Defendant has moved on identical grounds in requesting that the Court remit Plaintiff's award of punitive damages as excessive and violative of due process. Plaintiff incorporates the arguments set forth in his Suggestions in Opposition to Defendant's Remittur into these Suggestions. Defendant's conduct was of the most egregious variety and the amount of punitive damages awarded by the jury was proper.

In addition, no argument has been made that the procedures and process leading to the punitive award was improper or unfair. Defendant was able to put on evidence and testified in both the compensatory and punitive phase. Moreover, Defendant is completely indemnified for the entirety of the judgment and jury verdict by his insurance carrier. The jury did not hear such evidence or argument that there was no evidence Defendant would be required to pay any amount of the ultimate verdict. This is further indication that the amount awarded was not the product of passion or prejudice. Instead, the jury's award of $1,000,000.00 for punitive damages was appropriate given the reprehensibility of Defendant's conduct, the harm and potential harm to Plaintiff and the amount necessary to punish Defendant and deter other law enforcement officers from similar wrongful conduct. (*see* Instr. No. 21).

When a claim is made that damages are excessive, a new trial can be warranted if the "damage award is the result of passion and prejudice…" *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1210 (8th Cir. 1999). No allegation has been made nor has defendant

8

pointed to any piece of evidence or conduct of the jury to argue that the damage awards were driven by passion and prejudice.

### e. Compensatory Damages Awarded For the Misuse of the Taser Were Not Grossly Excessive or Unsupported

Defendant's arguments for a new trial concerning the amount of compensatory damages awarded by the jury for his misuse of the taser are identical to those presented in his Motion for Remittur. Rather than restate his position, Plaintiff incorporates the arguments set forth in his Suggestions in Opposition to Defendant's Motion for Remittur concerning the compensatory damages awarded by the jury for Defendant's misuse of the taser.

Defendant has made no claim and has pointed to no evidence that the damages awarded in this case were driven by passion or prejudice that could theoretically lead to a new trial. *See Thorne*, 197 F.3d at 1210. Notably, the jury's award of compensatory damages is significantly less than that sought by Plaintiff for his anoxic brain injury. In closing argument, Plaintiff's counsel requested an award between $8,250,000 and $8,900,000.00 for Plaintiff's brain injury. The jury's award of compensatory damages did not approach this amount and are indicative that the jury weighed the evidence and were not influenced by passion, prejudice or bias. Plaintiff was tased into a full cardiac arrest and was pulseless, breathless and near death before emergency personnel resuscitated him. As his treating physician testified, normally patients like Plaintiff who present to the emergency department with a Glasgow Coma Scale score of 3 (the same score a corpse receives) and with posturing of the extremities, do not fare nearly as well. While Plaintiff has made a substantial recovery, his persistent, permanent and ongoing symptoms from his brain injury effect nearly every aspect of his daily life. For this, as

9

well as the reasons set forth in Plaintiff's Suggestions in Opposition to Defendant's Motion for Remittur, Defendant's request for a new trial should be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Runnels is not entitled to a new trial. The jury's verdict was not against the weight of the evidence (since Defendant called only one expert who did not address the nature and extent of Bryce's injuries), Mr. Dreiling and Dr. Tabak's opinions are proper and admissible and the punitive and compensatory awards were not excessive and unsupported. For these reasons, Plaintiff respectfully requests the Court deny Defendant's request for a new trial.

Respectfully submitted,

**LAW OFFICES OF JOHN C. BURTON**

/s/ John C. Burton
John C. Burton (CA 86029) Pro Hac Vice
128 N. Fair Oaks Ave.
Pasadena, CA 91103
Phone: (626) 449-8300
Fax: (626) 449-4417
Email: jb@johnburtonlaw.com

**THE HAUS LAW FIRM LLC**

/s/ Daniel J. Haus
Daniel J. Haus MO #45678
7926 East 171st Street, Suite 106
Belton, MO 64012
Phone: (816) 591-3960
Fax: (816) 245-7802
Email: dhaus@hauslawfirm.com

**PRESLEY & PRESLEY, LLC**

/s/ Matthew A. McCoy
Kirk R. Presley MO #31185
Matthew A. McCoy MO #68240
4801 Main Street, Suite 375
Kansas City, MO 64112
Phone: (816) 931-4611
Fax: (816) 931-4646
Email: kirk@presleyandpresley.com
matthew@presleyandpresley.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies on February 6, 2019, the foregoing document was filed utilizing the Court's CM/ECF system, which delivers electronic notification to all counsel of record

  <u>/S/Matthew A. McCoy</u>
  Matthew A. McCoy