**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| BRYCE MASTERS, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No.:    4:16-cv-01045 |
| | ) |
| CITY OF INDEPENDENCE, et al. | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION
TO ALTER OR AMEND JUDGMENT BY WAY OF REMITTUR**

COMES NOW Plaintiff, by and through his attorneys of record, and hereby submits his Suggestions in Opposition to Defendant Timothy Runnels' Motion to Alter or Amend Judgment by way of Remittur.

### I.    JUDGMENT ENTERED

On December 14, 2018, the jury returned a verdict in favor of Plaintiff in the amount of $5,000,000 in compensatory damages and $500,000 in punitive damages on Plaintiff's claim for Defendant's misuse of the taser and in favor of Plaintiff in the amount of $50,000 in compensatory damages and $1,000,000 in punitive damages on Plaintiff's claim for Defendant throwing him face first onto the concrete. The same day, the Court entered judgment in favor of Plaintiff in accordance with the jury's verdict.

### II.    DEFENDANT'S REQUESTS

Defendant seeks remittur for both verdicts rendered in Plaintiff's favor and against Defendant; throwing him face first and handcuffed onto the concrete and for intentionally deploying a taser into his chest for fifteen seconds while Plaintiff was complying with all commands and was no threat to Defendant. Specifically, Defendant seeks to have the Court remit Plaintiff's punitive damage award concerning Defendant

1

throwing Plaintiff onto the concrete from $1,000,000 to a maximum of $100,000 and to remit Plaintiff's compensatory judgment concerning the intentional misuse of the taser from $5,000,000 to no more than $500,000. Both requests should be denied.

### a. Punitive Damage Award Concerning Defendant Throwing Plaintiff was not Excessive or Violative of Due Process[1]

Defendant's sole challenge to the punitive damage award concerning his throwing Plaintiff to the ground is that the ratio of actual damages to punitive damages is excessive and violates due process. In evaluating the excessiveness of a punitive damage award, Courts look to "the proportional disparity…between the punitive damages and the compensatory damages awarded, the civil or criminal penalties that may be imposed in comparable cases, and the degree of reprehensibility of the defendant's conduct." *Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1025-26 (8th Cir. 2000). The strength of the reprehensibility or similar sanctions factor may justify a higher ratio of punitive damages to compensatory damages. *See U.S. v. Big D Enterprises, Inc.*, 184 F.3d 924, 934 (8th Cir. 1999). Given the reprehensibility of his conduct, the punitive award is fair, appropriate and not excessive.

### i. Defendant's Conduct was Reprehensible and Sadistic

When evaluating a punitive damage award, the degree of reprehensibility is "perhaps the most important indicium of the reasonableness of a punitive damage award." *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996). In assessing the degree of reprehensibility, courts consider whether:

> The harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless disregard of the health and

---

[1] There has been no allegation that fair procedures were not followed in order to overcome the strong presumption of the Constitutionality of the award. The jury was presented with all the evidence, heard Runnels' testimony two times and was not permitted to hear evidence that he would be indemnified by insurance or argument that there was no evidence he must actually pay any punitive award.

2

> safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery or deceit or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

Contrary to Defendant's suggestions, his action of throwing a lifeless handcuffed teenager face-first onto a concrete driveway go far beyond 'bad' and a 'momentary lapse in judgment' and instead are repugnant and sadistic. Defendant was an experienced police officer entrusted to protect the citizens he was sworn to serve. Instead of upholding his duty, he drug an unconscious and completely vulnerable seventeen year-old nearly out of view of his dash cam and threw him to the pavement. As evidenced by his testimony at trial, Defendant still refuses to accept the reprehensibility of his actions and attempted to maintain his story that he was losing his grip on Plaintiff and was trying to maneuver him to the curb-a story blatantly contradicted by the video.

When looking at the enumerated factors bearing on reprehensibility, each dictate a substantial punitive award. There is zero doubt that Defendant's actions caused physical injuries to Plaintiff. This is apparent from the testimony and medical records offered into evidence that Plaintiff had sustained broken teeth resulting from the throw as opposed to some economic loss. Further, the recklessness and indifference to Plaintiff's health shown by Defendant is readily apparent from the recording of the incident. Defendant clearly throws an unresponsive and handcuffed teenager face-first onto the concrete and makes no effort to break Plaintiff's fall. Despite the obvious injury that would result from this conduct, Defendant takes no action to check on Plaintiff's well-being after the throw or even to role him over to examine his face. These actions and complete omissions further support the intentional nature of Defendant's actions. The recording of

3

the incident shows Defendant throw Plaintiff rather than dropping him after losing his grip. If the drop had been a mere accident or the result of Defendant losing his grip on Plaintiff, some response from Defendant would be expected. There was none and zero remorse was shown. As Plaintiff convulsed and moaned, Defendant made no effort to check his well-being and stood idly by as Plaintiff ceased to exhibit any signs of life.

Finally the characterization of Defendant's conduct as an isolated incident is not supported. As found by the jury, Defendant continuously violated the civil rights of a vulnerable and helpless seventeen year-old. When in a position to lessen Plaintiff's further injury, Defendant sat idle and showed no remorse. Continuing his disregard of Plaintiff's rights, Runnels stalked him adding to the emotional damages inflicted by his conduct.

Each and every consideration bearing on the reprehensibility of Defendant's conduct tilts toward awarding significant punitive damages against him. The jury was instructed to take these considerations into account when arriving at an amount of punitive damages (Instr. 21) to punish Defendant and deter future violations by law enforcement officers. The current award serves that vital purpose.

### ii. Punitive Damage Ratio is Not Excessive Given Defendant's Actions

While downplaying the egregious nature of his conduct, Defendant implies that a 4:1 ratio is the maximum permitted by the Eighth Circuit[2] and at most his conduct is

---

[2] In arriving at this statement, Runnels cites to three Eighth Circuit cases in which a 4:1 ratio was imposed. However, these cases are not similar to present matter. In *Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 362 (8th Cir. 2009), the Eighth Circuit specifically noted that the acts were "not so egregious as to set this case apart." Further, *Ondrisek v. Hoffman*, 698 F.3d 1020 (8th Cir. 2012) involved a compensatory award of $3,000,000. The Court repeatedly noted the substantial compensatory award in reducing the punitive award stating, "The 4.8:1 ratio affirmed in Eden Electrical currently marks this court's constitutional boundary *when multi-million dollar compensatory damages* award are involved…given the larger compensatory damage award here—the punitive damages should not exceed a 4:1 ratio." *Id.* at 1031.

4

worthy of a maximum 2:1 ratio of punitive to compensatory damages. This is not the law.

As noted by the Eighth Circuit, "The Supreme Court has consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award." *Ondrisek v. Hoffman*, 698 F.3d 1020, 1029 (8th Cir. 2012). Additionally, a higher ratio may…be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore*, 517 U.S. at 582.

Similar to here, the Eighth Circuit has upheld a 20:1 ratio of punitive damages to compensatory damages in *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206 (8th Cir. 1990) in a fraud and breach of fiduciary duty case. In *Davis*, the court upheld an award of $2,000,000 in punitive damages awarded by a jury to the estate of a woman against an investment firm. The liability on the part of the firm stemmed from an employee who had made unauthorized trades on behalf of the woman. Importantly, the ratio was upheld despite the argument and undisputed fact that the firm acted quickly to terminate the employee and credited the woman's account upon discovery of the employee's actions. *Id.* at 1225. *Davis* involved economic injury caused by what can be characterized as a lack of oversight by the firm and with the firm quickly taking action to rectify the situation caused by an employee. Here, the conduct was intentional, presented a high probability of causing significant physical injury and with zero remorse being shown.

5

In addition, the Eighth Circuit has upheld similar ratios.[3] In *Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024 (8th Cir. 2000), the Court upheld a 27:1 ratio of punitive to compensatory damages in a Missouri Merchandising Practices Act case. There the Court noted that while the "award was generous, it was far from grossly excessive." *Id.* at 1027. Further, a 14:1 ratio of punitive damages to compensatory damages was found not to be grossly excessive in *Dean v. Olibas*, 128 F.3d 1001 (8th Cir. 1997)(involving a bondsman who submitted a false affidavit leading to the arrest of an individual). Noting that the degree of reprehensibility was the most import indicium of reasonableness, the Court affirmed the punitive damage amount awarded against the bondsman.

Finally, this is not a situation in which Plaintiff sustained a concrete economic harm that is conducive to applying a mathematical ratio to evaluate the excessiveness of the punitive damage award. Rather, his harms were physical and involved significant pain and suffering. The damages arising out of such harms are not easily quantified. *See Rowe v. Hassman Corp.*, 381 F.3d 775, 783 (8th Cir. 2004). In these situations, a more substantial ratio may be justified. *See Gore*, 517 U.S. at 582. This holds true here given the egregious, sadistic and reprehensible conduct undertaken by Defendant and the difficulty in assigning a compensatory damage amount for the physical injuries and pain and suffering experienced.

---

[3] *See also U.S. v. Big D Enterprises, Inc.*, 184 F.3d 924, 934 (8th Cir. 1999)(upholding a 100:1 ratio and noting, after discussing the reprehensibility of the conduct, that "the punitive award in this case promotes such an outcome and reinforces the nation's commitment to protecting and preserving the civil rights of all."); *Craig v. Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1020-21 (8th Cir. 2008)(upholding 8.4:1 ratio); *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568 (8th Cir. 1997) (finding a 10:1 ratio appropriate in a workplace discrimination suit); Parsons v. First Investors Corp., 122 F.3d 525 (8th Cir. 1997)(upholding a 11.1:1 ratio); *U.S. v. Veal*, 365 F.Supp.2d 1034, 1037 (W.D. Mo. 2004)(finding a 22:1 ratio in Fair Housing Act case was not excessive).

### b. The Compensatory Damages Awarded for the Misuse of the Taser Were Not Grossly Excessive, Unsupported or a Plain Injustice

Defendant's claim that the jury's award of compensatory damages were excessive, unsupported and represent a plain injustice should be denied. "The amount of damages awarded is a function of the jury, not the Court, and a court should not set aside a verdict simply because it might have reached a different conclusion." *Schooley v. Orkin Extermination Co., Inc.*, 502 F.3d 759, 768 (8th Cir. 2007). "Generally the assessment of damages lies within the sound discretion of the jury." *Morissey v.Welsh Co.*, 821 F.2d 1294, 1299 (8th Cir. 1987)(finding award of $6,500,000.00 in compensatory damages was not grossly excessive); *see also Shearer v. Porter*, 155 F.2d 77, 81 (8th Cir. 1946)("The historic function of a jury is to determine issues of fact…Compensatory damages traditionally is an issue of fact…").

At trial, Plaintiff presented the testimony of Michael Dreiling, a vocational rehabilitation expert. Mr. Dreiling offered opinions concerning how Plaintiff's ongoing and documented limitations affected his future vocational opportunities and testified that Plaintiff was most likely to earn at the twenty-fifth percentile for high school graduates given his limitations. Based on Mr. Dreiling's opinions, Dr. Karen Tabak offered calculations and testified that high end of Plaintiff's future lost earning capacity was approximately $1,935,000.[4] Defendant presented no expert testimony contradicting the opinions of either Mr. Dreiling or Dr. Tabak.

In addition to these economic losses, Plaintiff presented further evidence of additional harms and losses endured by him that can be fairly characterized as non-economic losses for pain and suffering, emotional distress and increased risks of future

---

[4] While Defendant Tabak's report was not entered into evidence, she testified directly from the report concerning her findings. Defendant's characterization that there was nothing in evidence concerning these calculations is incorrect.

7

complications. Awards for these losses "should be committed to the sound discretion of the jury, especially when the jury is asked to determine injuries not easily calculated in economic terms. *Rowe* 381 F.3d at 783 (8th Cir. 2004); *Stafford v. Neurological Medicine, Inc.*, 811 F.2d 470, 475 (8th Cir. 1987)("[T]he assessment of damages is especially within the jury's sound discretion when the jury must determine how to compensate an individual for an injury not easily calculable in economic terms."); *Manus v. American Airlines, Inc.*, 314 F.3d 968, 974 (8th Cir. 2003)("It was for the jury to determine the amount that it felt would adequately compensate Stephanie and her daughters for the terror they experienced during and immediately after the crash itself, as well as for the post-crash trauma they have suffered and will continue to suffer.")

Substantial evidence was presented concerning Plaintiff's non-economic damages. Plaintiff's emergency room surgeon testified concerning his immediate treatment including having his body artificially cooled in hypothermic protocol and being placed in a coma. In addition, the medical records entered and testimony showed Plaintiff remained in a coma and was hospitalized in intensive care for nearly a week with a guarded prognosis of survival or substantial recovery. His appearance was at the hospital was documented by photos introduced into evidence as Exhibits 41-42 183, 185, which show Plaintiff on a ventilator with EKG plugs on his body illustrating the gravity of his situation. Moreover, the jury continued to hear of Plaintiff's rehabilitation after his discharge from the hospital from his neuropsychologist, Dr. Terrie Price. Plaintiff's treatment was not isolated and his recovery was not immediate. His treatment continued for an appreciable amount of time and his recovery is ongoing.

8

Further, because of his injuries and deficits, Plaintiff was not able to attend the first semester of his senior year of high school, a vital time in every student's life. When he was able to return, Plaintiff's course work was altered as he attended some classes and completed several through home bound programs outside of the classroom. In addition, testimony and medical records entered into evidence as Ex. 161-162 document Plaintiff's depression and severe anxiety symptoms noted by his neuropsychologist over a year after the tasing event that caused his hypoxic brain injury. This is further bolstered by his mother's testimony concerning his recurrent insomnia, deteriorated family and personal relationships and profound changes in Plaintiff's personality as well as continued posturing movements.

Additionally, the undisputed testimony of Dr. Steven Arkin proved that Plaintiff's deficits noted in his neuropsychological evaluations are permanent and unlikely to improve as recovery from anoxic brain injuries occurs during the first year following the injury. In addition to these deficits, Plaintiff's injury has led to a decreased reserve of brain cells as a result of the prolonged period of lack of oxygenated blood to his brain. As a result, Dr. Arkin testified that Plaintiff was at an increased risk of earlier onset dementia because of his injuries.

Finally, Stacy Masters offered testimony concerning Defendant's post-incident actions. This included Defendant following and driving by Plaintiff's house while Defendant was under investigation by the Department of Justice. Mrs. Masters further testified to the emotional effect this event had on Plaintiff, including that he slept in his parents' bed following Defendant's actions. Additionally, Mrs. Masters indicated that Plaintiff still has physical manifestations of his brain injury shown through the posturing

9

of his hands to this day, repeated loss of personal items including his cell phone, lapses in memory and disorientation and anger.

While Defendant has tried to minimize the harms his actions caused, the testimony and evidence presented at trial paints a different picture. Plaintiff's injuries and losses were and are significant and ongoing and include an increased risk of developing significant health complications.  His cognitive and psychological changes and deficits are permanent at this stage and his remaining life expectancy of fifty six years will be marked by his continuous anger, frustration, isolation, depression and anxiety as he copes with cognitive deficits and psychological changes.  When the totality of the losses are examined, the jury's verdict was not excessive, shocking or against the weight of the evidence (especially taking into account that the Defendant offered no expert testimony to the contrary).[5]  Instead, the verdict was well within the jury's discretion in arriving at the difficult task of assessing Plaintiff's present and future damages.

### III. CONCLUSION

For the reasons set forth above, Defendant's request for Remittur should be denied.  The jury's award of punitive damages against Defendant for throwing Plaintiff face first onto the concrete driveway was not excessive when factoring in the utter reprehensibility of Defendant's conduct.  Likewise, the jury's compensatory award for Defendant's misuse of the taser was not only not excessive, but supported by uncontroverted evidence of Plaintiff's losses and harms suffered, and in keeping with similar injuries and verdicts for a lifetime of brain damage.

---

[5] *See Jennings v. Fuller*, 2017 WL 2242357 at *15 (E.D. MI. May 23, 2017)(finding an award of $5,000,000.00 for pain and suffering appropriate in a §1983 case in which no loss of earning capacity was alleged).

Respectfully submitted,

**LAW OFFICES OF JOHN C. BURTON**

/s/ John C. Burton
John C. Burton     (CA 86029) Pro Hac Vice
128 N. Fair Oaks Ave.
Pasadena, CA 91103
Phone: (626) 449-8300
Fax:     (626) 449-4417
Email: jb@johnburtonlaw.com

**THE HAUS LAW FIRM LLC**

/s/ Daniel J. Haus
Daniel J. Haus          MO #45678
7926 East 171st Street, Suite 106
Belton, MO 64012
Phone: (816) 591-3960
Fax:     (816) 245-7802
Email: dhaus@hauslawfirm.com

**PRESLEY & PRESLEY, LLC**

/s/ Matthew A. McCoy
Kirk R. Presley         MO #31185
Matthew A. McCoy    MO #68240
4801 Main Street, Suite 375
Kansas City, MO 64112
Phone: (816) 931-4611
Fax:     (816) 931-4646
Email: kirk@presleyandpresley.com
          matthew@presleyandpresley.com
*Attorneys for Plaintiff*

11

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies on February 6, 2019, the foregoing document was filed utilizing the Court's CM/ECF system, which delivers electronic notification to all counsel of record

  /S/Matthew A. McCoy
  Matthew A. McCoy