UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MISSOURI


BRYCE E. MASTERS,                    )
                                     )
                    Plaintiff,       )
                                     )
          vs.                        )   Case No.
                                     )   16-CV-01045-GAF
CITY OF INDEPENDENCE,                )
MISSOURI, et al.,                    )
                                     )
                    Defendants.      )


TRANSCRIPT OF PROCEEDINGS - VOLUME VI
BEFORE THE HONORABLE GARY A. FENNER
SENIOR UNITED STATES DISTRICT JUDGE
DECEMBER 14, 2018
KANSAS CITY, MISSOURI

APPEARANCES

FOR THE PLAINTIFF:
      MR. KIRK R. PRESLEY
      MR. MATTHEW A. McCOY
      MS. JILL A. PRESLEY
      Presley & Presley
      4801 Main Street, Suite 375
      Kansas City, Missouri 64112

      MR. JOHN C. BURTON
      128 North Fair Oaks Avenue
      Pasadena, California, 91103



      Proceedings recorded by mechanical stenography, transcript
produced by computer



KATHERINE A. CALVERT, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER
CHARLES EVANS WHITTAKER COURTHOUSE
400 EAST NINTH STREET
KANSAS CITY, MISSOURI 64106

747

```
                         APPEARANCES
                         (continued)

FOR THE PLAINTIFF (continued):
     MR. DANIEL J. HAUS
     The Haus Law Firm LLC
     7926 East 171st Street, Suite 106
     Belton, Missouri 64012

FOR THE DEFENDANT RUNNELS:
     MR. KEITH A. CUTLER
     MS. DANA T. CUTLER
     MS. CHARNISSA E. HOLLIDAY-SCOTT
     James W. Tippin & Associates
     21 West Gregory Boulevard
     Kansas City, Missouri 64114
```

```
            I N D E X                              Page

        NOVEMBER 27, 2018

           VOLUME I

MICHAEL DREILING
     Direct examination by Mr. Presley . . . . . . . . . .  14
     Cross-examination by Mr. Cutler . . . . . . . . . . .  20
```

Case 4:16-cv-01045-GAF   Document 369   Filed 07/19/19   Page 3 of 58

I N D E X                                   Page
(continued)

DECEMBER 10, 2018

VOLUME II

Plaintiff's opening statement. . . . . . . . . . . . . .  96

Defendant's opening statement. . . . . . . . . . . . . . 109

PLAINTIFF'S EVIDENCE

ANDREW DENNIS
        Direct examination by Mr. Burton. . . . . . . . . 128
        Cross-examination by Mr. Cutler . . . . . . . . . 164

Case 4:16-cv-01045-GAF   Document 369   Filed 07/19/19   Page 4 of 58

I N D E X                                    Page
(continued)

DECEMBER 11, 2018

VOLUME III

SCOTT GRASHER
      Direct examination by Mr. Burton. . . . . . . . . . 195
      Cross-examination by Mr. Cutler . . . . . . . . . . 205

ED TURNER
      Direct examination by Mr. Presley . . . . . . . . . 206
      Cross-examination by Mr. Cutler . . . . . . . . . . 225
      Redirect examination by Mr. Presley . . . . . . . . 231
      Recross-examination by Mr. Cutler . . . . . . . . . 233
      Further redirect examination by Mr. Presley . . . . 234

STEPHEN DAVIDSON
      Direct examination by Mr. McCoy . . . . . . . . . . 235
      Cross-examination by Mr. Cutler . . . . . . . . . . 248

MICHAEL LEONESIO
      Direct examination by Mr. Burton. . . . . . . . . . 255
      Cross-examination by Mr. Cutler . . . . . . . . . . 311
      Redirect examination by Mr. Burton. . . . . . . . . 331

ROGER BRYCE BLACKMORE
      Direct examination by Mr. Presley . . . . . . . . . 332
      Cross-examination by Mr. Cutler . . . . . . . . . . 343
      Redirect examination by Mr. Presley . . . . . . . . 345
      Recross-examination by Mr. Cutler . . . . . . . . . 347

STACY MASTERS
      Direct examination by Mr. Presley . . . . . . . . . 349
      Cross-examination by Mr. Cutler . . . . . . . . . . 377

Stipulation of facts were read . . . . . . . . . . . . . 403

Case 4:16-cv-01045-GAF   Document 369   Filed 07/19/19   Page 5 of 58

I N D E X                                        Page
(continued)

DECEMBER 12, 2018

VOLUME IV

TERRIE PRICE
     Direct examination by Mr. Presley . . . . . . . . . . 424
     Cross-examination by Mr. Cutler . . . . . . . . . . . 440
     Redirect examination by Mr. Presley . . . . . . . . . 450
     Recross-examination by Mr. Cutler . . . . . . . . . . 451

MICHAEL J. DREILING
     Direct examination by Mr. Presley . . . . . . . . . . 452
     Cross-examination by Mr. Cutler . . . . . . . . . . . 461
     Redirect examination by Mr. Presley . . . . . . . . . 481

KAREN GROSSMAN TABAK
     Direct examination by Mr. Presley . . . . . . . . . . 483
     Cross-examination by Mr. Cutler . . . . . . . . . . . 493

STEVEN MICHAEL ARKIN
     Direct examination by Mr. Presley . . . . . . . . . . 497
     Cross-examination by Mr. Cutler . . . . . . . . . . . 509

STANLEY AUGUSTIN
     Direct examination by Mr. Presley . . . . . . . . . . 523
     Cross-examination by Mr. Cutler . . . . . . . . . . . 532
     Redirect examination by Mr. Presley . . . . . . . . . 538
     Recross-examination by Mr. Cutler . . . . . . . . . . 540

DEFENDANT'S EVIDENCE

EVAN BATEMAN
     Direct examination by Mr. Cutler. . . . . . . . . . . 553
     Cross-examination by Mr. McCoy. . . . . . . . . . . . 556

SCOTT McKEE
     Direct examination by Mr. Cutler. . . . . . . . . . . 558
     Cross-examination by Mr. Presley. . . . . . . . . . . 562

KURT WYCKOFF
     Direct examination by Mr. Cutler. . . . . . . . . . . 562

DARRELL SCHMIDLI
     Direct examination by Mr. Cutler. . . . . . . . . . . 565
     Cross-examination by Mr. Presley. . . . . . . . . . . 570

Case 4:16-cv-01045-GAF   Document 369   Filed 07/19/19   Page 6 of 58

I N D E X                                           Page
                  (continued)

TOM DAILEY
     Direct examination by Mr. Cutler. . . . . . . . . . 573
     Cross-examination by Mr. Presley. . . . . . . . . . 579

Jury instructions conference . . . . . . . . . . . . . . 584

Case 4:16-cv-01045-GAF   Document 369   Filed 07/19/19   Page 7 of 58

I N D E X                                    Page
(continued)


DECEMBER 13, 2018

VOLUME V

Jury instructions conference . . . . . . . . . . . . . . . 604

GARY MICHAEL VILKE
     Direct examination by Mr. Cutler. . . . . . . . . . 618
     Cross-examination by Mr. Burton . . . . . . . . . . 635

TIMOTHY RUNNELS
     Direct examination by Mr. Cutler. . . . . . . . . . 636
     Cross-examination by Mr. Presley. . . . . . . . . . 653
     Redirect examination by Mr. Cutler. . . . . . . . . 676

Plaintiff's closing argument . . . . . . . . . . . . . . . 692

Defendant's closing argument . . . . . . . . . . . . . . . 707

Plaintiff's rebuttal closing argument. . . . . . . . . . . 730

Case 4:16-cv-01045-GAF   Document 369   Filed 07/19/19   Page 8 of 58

I N D E X                                        Page
(continued)

DECEMBER 14, 2018

VOLUME VI

Verdict. . . . . . . . . . . . . . . . . . . . . . . 767

Plaintiff waives punitive damage opening statement . . . . 772

Defendant's punitive damage opening statement. . . . . . . 773

PLAINTIFF'S EVIDENCE ON PUNITIVE DAMAGES

Stipulation of facts . . . . . . . . . . . . . . . . . . 775

DEFENDANT'S EVIDENCE ON PUNITIVE DAMAGES

TIMOTHY RUNNELS
      Direct examination by Mr. Cutler. . . . . . . . . . 776
      Cross-examination by Mr. Presley. . . . . . . . . . 783

Plaintiff's punitive damage closing argument . . . . . . . 788

Defendant's punitive damage closing argument . . . . . . . 791

Plaintiff's rebuttal punitive damage closing argument. . . 798

Verdict on punitive damages. . . . . . . . . . . . . 800

Case 4:16-cv-01045-GAF   Document 369   Filed 07/19/19   Page 9 of 58

INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| FOR THE PLAINTIFF: | | | |
| 1 | IPD mission statement | 208 | 208 |
| 4 | Taser information | 247 | 247 |
| 5 | Taser warnings | 247 | 247 |
| 8 | CEW user update | 247 | 247 |
| 12 | Photograph | 202 | 203 |
| 37 | Photograph | 232 | 232 |
| 39 | Taser training | 247 | 247 |
| 41 | Photograph | 194 | 194 |
| 42 | Photograph | 194 | 194 |
| 44 | Response to force policy | 210 | 210 |
| 47 | Taser download | 194 | 194 |
| 53 | Taser user certificate test | 247 | 247 |
| 60 | Bryce Masters' school transcript | 354 | 354 |
| 79 | Photograph | 354 | 354 |
| 80 | Photograph | 357 | 357 |
| 100 | Discharge summary | 528 | 528 |
| 148 | IPD general order code of conduct | 208 | 208 |
| 149 | IPD general order | 210 | 210 |
| 156 | Runnels' report | 660 | 660 |

756

INDEX OF EXHIBITS
(continued)

| EXHIBIT NO. | DESCRIPTION | OFFERED | RECEIVED |
|---|---|---|---|
| 157 | AMR report | 525 | 525 |
| 158 | Centerpoint medical records | 525 | 525 |
| 161 | Ability KC medical records | 426 | 427 |
| 162 | Rehabilitation Institute medical records | 426 | 427 |
| 169 | DVD dash cam video | 193 | 193 |
| 170 | DVD dash cam video | 193 | 194 |
| 171 | DVD cell phone recording | 194 | 194 |
| 172 | Photograph | 660 | 660 |
| 180 | Photograph | 558 | 558 |
| 183 | Photograph | 364 | 364 |
| 184 | Photograph | 364 | 364 |
| 185 | Photograph | 364 | 364 |
| 187 | Photograph | 202 | 203 |

```
                    INDEX OF EXHIBITS
                      (continued)

EXHIBIT
  NO.              DESCRIPTION           OFFERED      RECEIVED

FOR THE DEFENDANT:

  D13           Toxicology report      536 & 541    536 & 541

  D18           Report of Panelipse       535          535

  D19           Consultation note         541          541

  D23           Neurology progress
                note                       534          534

  D36           CV of Gary Vilke           621          621
```

```
 1                        DECEMBER 14, 2018

 2                        MORNING SESSION

 3            (The jury resumed deliberation at 8:45 a.m.)

 4            (The following proceedings were had in the courtroom

 5   at 9:20 a.m. out of the presence of the jury:)

 6            THE COURT:  We have a note from the jury.  Their

 7   note inquires, "Can we review Dr. Karen Grossman Tabak's

 8   financial finding report that was presented during the trial?"

 9   We've had some discussion on this, and I think we're all in

10   agreement that the appropriate response is, "The report was not

11   entered as an exhibit in evidence."

12            Mr. Presley.

13            MR. PRESLEY:  That's correct, Your Honor.

14            THE COURT:  Mr. Cutler.

15            MR. CUTLER:  Yes, sir, we're in agreement.

16            THE COURT:  All right.  Thank you all.

17            MR. PRESLEY:  I think the only addition perhaps,

18   Your Honor, would be that they are to remember the evidence

19   from the witness stand.

20            THE COURT:  I'm sorry.  What?

21            MR. PRESLEY:  That they are to remember the evidence

22   from the witness stand.  The typical recollection --

23            THE COURT:  You want me to add, "You will have to

24   recall the evidence"?

25            MR. CUTLER:  So how would it read in context, Your
```

759

1  Honor?

2          THE COURT:  I don't know.  I haven't written it out

3  yet.  I'm going to write out my initial response because I

4  think that clearly is appropriate.  The report was not entered

5  into evidence.

6          MR. PRESLEY:  As an exhibit.

7          THE COURT:  My only hesitation is I already told

8  them once they have to recall the evidence.  I mean, sometimes

9  that's all you can do, but I kind of feel like that is somewhat

10  of a message to the jury that I'm not being helpful.  It's just

11  kind of a personal thing.

12          MR. PRESLEY:  Whatever the Court feels is most

13  helpful.

14          THE COURT:  I think I'll leave it with, "The report

15  was not entered as an exhibit in evidence."  That clearly

16  conveys to them the information was provided but just wasn't

17  received as an exhibit.

18          All right.  Anything further on that, Mr. Presley?

19          MR. PRESLEY:  It was not received because it was

20  not offered, though.  I think that is the more accurate

21  statement.

22          MR. CUTLER:  So say, "It was not offered or received

23  into evidence."  Is that how you want to phrase it?

24          THE COURT:  I'm just going to leave it as I've

25  got it.  "The report was not entered as an exhibit in

1    evidence."

2            Any further record on that, Mr. Presley?

3                MR. PRESLEY:  No, Your Honor.

4                THE COURT:  Mr. Cutler?

5                MR. CUTLER:  No.

6                THE COURT:  All right.  Thank you.

7                (A recess was taken.)

8                (The following proceedings were had in the courtroom

9    out of the presence of the jury:)

10               THE COURT:  Thank you.  You can be seated.

11               Just for your information, the jury just advised us

12   they are going to take a 15-minute break.  Just passing that

13   along.

14               Mr. Denk, you want to come up?  You want to sit on

15   either side?

16               MR. DENK:  I want to sit square in the middle.

17               THE COURT:  Well, I received your motion and

18   reviewed your authority on it and Mr. Cutler's suggestions as

19   well.  So let me hear what Mr. Presley has to say.

20               MR. PRESLEY:  The cases cited by Mr. Denk and also

21   Mr. Cutler all deal with the issue of liability insurance in an

22   actual damage setting, and they correctly state the law on

23   that, and I think it's well recognized by everybody that the

24   financial condition of the defendant and the presence of

25   liability insurance for an underlying actual damages is

                                761

1   typically excluded from evidence.  There are exceptions to that

2   rule.  If a witness testifies and is biased or capacity as

3   being affiliated with the underlying insurance carrier becomes

4   relevant, then that can override that.

5           So there's always circumstances where that general

6   prohibition does not apply, and it would not apply in a

7   punitive damage situation, and we've cited in our pretrial

8   brief to the Court the authority for the admission of the

9   indemnity provisions.

10          So the structure in this case is that MOPERM has an

11  underlying primary layer of $2 million in coverage pursuant to

12  their memorandum of coverage and Star Insurance Company has an

13  $8 million excess layer that takes force and effect when that

14  amount has been tendered.  That amount has been tendered and

15  received.

16          The entirety of $10 million liability coverage is

17  for 1983 acts specifically, and the language of the policy

18  includes indemnity for all damages or judgments awarded.  There

19  was a period of time when Star Insurance had issued a

20  reservation of rights on the issue.  They were reserving their

21  right to deny coverage on punitive issues.  That reservation,

22  according to Mr. Cutler, has been lifted, and so there is no

23  dispute that the indemnity limits apply to the punitive award

24  in this case.

25          And, of course, the fundamental issue in the

1    punitive damage portion of the bifurcated trial would be the
2    assets or financial capability of the defendant, and that issue
3    is relevant, and so where the defendant has an $8 million
4    indemnity right, we believe that we're allowed to offer that
5    coverage into evidence so that the jury understands exactly
6    who's responsible for that payment and what assets the
7    defendant has in that regard.

8              THE COURT:  All right.  Thank you.

9              And, Mr. Denk, I think you pretty much addressed all
10   of that in your motion, but is there anything further you'd
11   like to speak to or add to what you've already provided?

12             MR. DENK:  The only thing I would say is we led in
13   our briefing with that Ninth Circuit case, the Larez decision.
14   We did that because it dealt specifically with the issue of
15   punitive damages.  It's also a Section 1983 police misconduct
16   case and found that just as with compensatory damages,
17   admission of liability insurance relative to the punitive
18   damages is equally inappropriate.  It doesn't serve the goal of
19   arriving at a fair compensation amount, and so it should be
20   deemed irrelevant.

21             THE COURT:  All right.  Thank you.

22             Mr. Cutler, do you want to add anything to this
23   discussion?

24             MR. CUTLER:  No, sir.

25             THE COURT:  All right.  Thank you.

1          MR. PRESLEY:  I think the only distinction, Your

2     Honor, is that in the Ninth Circuit case it was not a

3     bifurcated trial.

4          THE COURT:  All right.  I'm going to sustain the

5     motion to quash.  I believe that insurance coverage, even in a

6     punitive submission, is not relevant or admissible pursuant to

7     Eighth Circuit law.

8          MR. PRESLEY:  So as it relates to our offer of proof

9     on this, Your Honor, how would the Court like to proceed?

10          THE COURT:  Well, you have the policy?

11          MR. PRESLEY:  We do.

12          THE COURT:  I think it -- you could offer that as an

13     exhibit, and I don't think there's any question about

14     authenticity of that policy or the extent of coverage.  I

15     believe, at least it's my understanding, that all parties and

16     interests are in agreement that Star Insurance does provide

17     indemnity coverage for the $8 million as Mr. Presley has

18     addressed.

19          Would you agree with that, Mr. Denk?

20          MR. DENK:  You know, the only thing I would say, and

21     I think we have this in our brief, Your Honor, is that no one

22     from the city has direct knowledge about the reservation of

23     rights issue and what the relationship is between Star and

24     Defendant Runnels as to whether --

25          THE COURT:  So you don't necessarily take a position

```
 1    one way or another on that, you just say that's not your

 2    responsibility to determine the extent of the coverage.

 3              MR. DENK:  Well, more specifically, relative to Mr.

 4    Presley's proffer, no one from the city could offer testimony

 5    that Defendant Runnels would be indemnified for either

 6    compensatory or punitive damages award.

 7              MR. PRESLEY:  My offer of proof from the city is

 8    there's $10 million in liability coverage that was in force and

 9    effect for police officers employed by the City of Independence

10    specifically and that were acting in the scope and course of

11    duties back on September 14th of 2014.  I would call Mr.

12    Runnels to discuss the reservation -- the lifting of the

13    reservation as it relates to punitives.

14              THE COURT:  Does anyone dispute Mr. Presley could

15    offer evidence to support the proposition that he has just

16    stated?

17              MR. DENK:  I think that's right.

18              THE COURT:  You have no reason to dispute that, Mr.

19    Denk?

20              MR. DENK:  That's right.

21              THE COURT:  Do you, Mr. Cutler?

22              MR. CUTLER:  I have no reason to dispute that, Your

23    Honor.

24              THE COURT:  I will consider that as Mr. Presley's

25    offer of proof.
```

```
 1              MR. PRESLEY:  I'm sorry to interrupt, Your Honor,
 2   but just to be clear, our offer of proof would specifically be
 3   that there's a $2 million primary layer and an $8 million
 4   excess layer because, of course, any subsequent claim for
 5   credit would be against the entirety of the judgment, and so we
 6   believe the full amount of the indemnity limits would be
 7   included in our offer of proof of 10 million.
 8              THE COURT:  All right.  Does anyone take issue with
 9   the offer of proof just stated by Mr. Presley?
10              Mr. Denk?
11              MR. DENK:  No, Your Honor.
12              THE COURT:  Mr. Cutler?
13              MR. CUTLER:  No, sir.
14              THE COURT:  All right.  That is considered to
15   be a legitimate and acceptable offer of proof that you
16   could offer evidence to support what you state.  It's not
17   necessary that you proceed with that evidence, and that offer
18   is denied.
19              MR. PRESLEY:  Thank you, Your Honor.
20              THE COURT:  All right.  Thank you all.
21              MR. DENK:  Thank you, Your Honor.
22              THE COURT:  Thank you.
23              (A recess was taken.)
24              (The following proceedings were had in the courtroom
25   out of the presence of the jury:)
```

1    THE COURT:  Thank you.  You can be seated.

2    If we go to a punitive phase, we'll take about ten

3    minutes before we begin with that after I receive the jury's

4    verdicts at this stage in order to present you with the

5    instructions that we have and see if there are any issues with

6    any of that, and I still -- I know that Mr. Presley is willing

7    to waive opening statements, and we'll talk about whether his

8    position remains the same and what Mr. Cutler's position is on

9    that.

10    So, Lisa, would you bring the jury in, please.

11    (The jury returned into open court with their

12    verdict at 10:26 a.m.)

13    THE COURT:  Thank you.  Everyone can be seated.

14    Ms. Tischer, I will read the jury's verdicts, but

15    since you have the forms, I take it you are the foreperson of

16    this jury; is that correct?

17    THE FOREPERSON:  Yes, sir.

18    THE COURT:  And so I'd like to just ask you, Ms.

19    Tischer, has the jury reached verdicts on the issues submitted

20    to you?

21    THE FOREPERSON:  We have, Your Honor.

22    THE COURT:  Thank you.  Would you please hand the

23    verdict forms to Ms. Mitchell for me.

24    Thank you.

25    Verdict A.  "On plaintiff Bryce Masters's claim

767

| | |
|---|---|
| 1 | against defendant Timothy Runnels, as submitted in Instruction |
| 2 | No. 12, and further considering Instruction No. 13, we find in |
| 3 | favor of Bryce Masters. |
| 4 | "We find plaintiff Bryce Masters' compensatory |
| 5 | damages to be $5 million." |
| 6 | Verdict B. "On plaintiff Bryce Masters' claim |
| 7 | against defendant Timothy Runnels, as submitted in Instruction |
| 8 | No. 16, we find in favor of Bryce Masters. |
| 9 | "We find plaintiff Bryce Masters' compensatory |
| 10 | damages to be $50,000." |
| 11 | Verdict C. "We find defendant Timothy Runnels is |
| 12 | liable for punitive damages for conduct submitted in |
| 13 | Instruction No. 12. |
| 14 | "We find defendant Timothy Runnels is liable for |
| 15 | punitive damages for conduct submitted in Instruction No. 16." |
| 16 | All of these forms are dated today and signed by Ms. |
| 17 | Tischer as foreperson of the jury. |
| 18 | Ms. Tischer, did I correctly read the jury's |
| 19 | verdicts in this case? |
| 20 | THE FOREPERSON: Yes, Your Honor. |
| 21 | THE COURT: Mr. Presley, do you care to have the |
| 22 | jurors polled? |
| 23 | MR. PRESLEY: I do not, Your Honor. |
| 24 | THE COURT: Mr. Cutler, do you? |
| 25 | MR. CUTLER: Yes, sir. |

```
 1              THE COURT:  All right.

 2              (Each juror, upon being asked, "Are those your

 3    verdicts? responded in the affirmative.)

 4              THE COURT:  Well, thank you very much, ladies and

 5    gentlemen.  We will now move on to the second phase for

 6    consideration of punitive damages.  I have a few matters to

 7    take care of before we begin with that.  So we're going to take

 8    a ten-minute recess.  You're free to leave the jury room or

 9    stay there, but I'd like to ask you to be back in the jury room

10    in ten minutes, at 10:40 please, and we will begin with the

11    next phase of the trial.

12              The instructions I've given you previously remain in

13    effect until the punitive phase of the trial is submitted to

14    you and decided by you.

15              So we'll see you shortly.  Thank you.

16              (The following proceedings were had in the courtroom

17    out of the presence of the jury:)

18              THE COURT:  Rhys, will you go ahead and retrieve the

19    instructions that we have for the punitive phase so we can

20    distribute those to counsel.

21              So, Mr. Presley, are you still of a mind to be

22    willing to waive opening statement?

23              MR. PRESLEY:  I am.

24              THE COURT:  Mr. Cutler, what's your position?  Do

25    you care to make an opening statement?
```

```
 1              MR. CUTLER:  Yes, sir.

 2              THE COURT:  All right.  How much time would you like

 3    to have?

 4              MR. CUTLER:  I'm going to say 15 minutes, but I

 5    don't know I'll take the whole 15.

 6              THE COURT:  All right.  You want 15 minutes?

 7              MR. PRESLEY:  I do not.

 8              THE COURT:  Do you want to waive your opening?

 9              MR. PRESLEY:  I do.

10              THE COURT:  All right.  And, Mr. Cutler, would you

11    like any kind of warning on your 15 minutes?

12              MR. CUTLER:  No, sir.

13              MR. PRESLEY:  And this is for opening statement?

14              THE COURT:  Opening statements.

15              MR. PRESLEY:  Very good.

16              THE COURT:  All right.  Rhys will bring those

17    instructions down and I'll come down with him.  They're

18    basically what you all submitted with a few minor adjustments,

19    but you can have a look at them.

20              MR. PRESLEY:  In the press of practice here, I've

21    forgotten how we broke down Verdict C.  Was it a dual line as

22    well?

23              THE COURT:  Verdict C the jurors were asked --

24              MR. PRESLEY:  I'm sorry, Your Honor.  Verdict D, the

25    batch that's coming.
```

1           THE COURT:  I don't remember that either.

2           MR. PRESLEY:  That's the only concern that we have.

3           THE LAW CLERK:  It's currently set up with one line.

4           THE COURT:  What was it, Janelle?

5           THE LAW CLERK:  It's currently set up with one line.

6           THE COURT:  One line?

7           THE LAW CLERK:  For punitive.

8           MR. PRESLEY:  I would just -- I think it would be

9  more appropriate to do it by package and to have it track the

10 liability finding with a reference to those instructions or

11 actually to Verdict A and to Verdict B actually.

12          THE COURT:  Yes, I agree with that.  That is proper,

13 so we'll make that adjustment.

14          MR. PRESLEY:  Thank you, Your Honor.

15          MR. CUTLER:  Thank you, Your Honor.

16          THE COURT:  Thank you all.

17          (A recess was taken.)

18          (The following proceedings were had in the courtroom

19 out of the presence of the jury:)

20          THE COURT:  Thank you.  You can be seated.

21          I'm revising that instruction, but I've given it to

22 you just so that you can write in, and we'll have it retyped

23 before it's submitted to the jury, but that is Instruction

24 No. 20.

25          In the second paragraph of Instruction No. 20 I'm going

1    to have it retyped to read, "Mr. Presley has elected to waive

2    opening statement on behalf of plaintiff.  Mr. Cutler will make

3    an opening statement on behalf of defendant."  And then the

4    rest of the instruction remains the same.

5            MR. PRESLEY:  Thank you, Your Honor.

6            THE COURT:  So you can look at Instruction No. 21,

7    and we're going to revise the verdict form as stated

8    previously, and we'll get all of that done before the

9    instructions are read to or go to the jury, and we'll have an

10   opportunity later on break to see if anyone has any issues with

11   Instruction No. 21.

12           So, Mr. Presley, are you ready to proceed?

13           MR. PRESLEY:  I am, Your Honor.

14           THE COURT:  Mr. Cutler?

15           MR. CUTLER:  Yes, sir.

16           THE COURT:  Lisa, would you bring the jury in.

17           (The following proceedings were had in the presence

18   of the jury:)

19           THE COURT:  Thank you.  Everyone can be seated.

20           So, ladies and gentlemen, we begin this phase with

21   another instruction from me.

22           (The Court reads Instruction No. 20 to the jury.)

23           THE COURT:  Mr. Presley.

24           MR. PRESLEY:  Thank you, Your Honor.

25           Plaintiff elects to waive his opening statement and

                              772

1    proceed directly to evidence on the punitive damages.

2            THE COURT:  Thank you.

3            Mr. Cutler.

4            Force of habit.

5            MR. CUTLER:  Thank you, Your Honor.

6            THE COURT:  Yes, sir.

7        DEFENDANT'S OPENING STATEMENT ON PUNITIVE DAMAGES

8            MR. CUTLER:  Ladies and gentlemen, good morning.
9    Again, let me say thank you for your service as jurors and the
10   time and attention that you all have devoted to this.  You
11   started deliberating yesterday and you came back this morning.
12   We all know this is a hardship for some of you, an imposition
13   on your time and we really appreciate it, both sides really do.

14           I want to talk to you a little bit about what we
15   think the evidence is going to show in this phase of the case.
16   This is the punitive damages phase.  And this is the phase
17   where you all get to decide what amount of money, if any, will
18   serve to punish defendant, Timothy Runnels, and to deter him
19   from like conduct in the future.  I want to talk to you about
20   what we think the evidence is going to show in that regard.

21           In terms of what it's going to take to punish him
22   financially, he doesn't have anything.  The evidence is going
23   to be he is in prison.  He makes what he makes in prison, and
24   you will hear testimony about that.  But it's going to be our
25   position that he's been punished enough.  He's already serving

1    time.  He's already given up his career as a police officer.

2              You heard the evidence, and you will hear the

3    evidence again that he went to college as a criminal justice

4    major.  He came out of college to become a police officer, and

5    he's been a police officer.  That's been his adult career.  You

6    will hear the evidence that's gone now.  He's no longer a

7    police officer.  You will hear the evidence he will never be a

8    police officer again.  And so you know the constitution

9    guarantees life, liberty, and the pursuit of happiness.  He has

10   his life.  He does not have his liberty.  He no longer has

11   pursuit of happiness because he can no longer pursue the career

12   that he has always wanted to pursue.  That's what the evidence

13   is going to be in this case.

14             So as you try to determine how can we punish him to

15   make sure this doesn't happen again?  It's not going to happen

16   again.  He can no longer be a police officer.  He's in prison

17   and he's learned his lesson.  So you will hear that evidence

18   from Mr. Runnels.

19             So I just wanted to let you know what we think the

20   evidence is going to be; and as you deliberate and as you think

21   about what it's going to take to punish this young man, just

22   keep that in mind.

23             Thank you very much.

24             THE COURT:  Mr. Presley.

25             MR. PRESLEY:  Plaintiffs are ready to proceed, Your

Honor.

PLAINTIFF'S EVIDENCE ON PUNITIVE DAMAGES

MR. PRESLEY: As the Court has previously instructed you, the following stipulated facts.

No. 1. This court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 as this action arises under the laws of the United States.

No. 4. On September 14th, 2014, Runnels was employed by the City of Independence, Missouri, as a police officer and was acting under the color of state law as an employee of the city.

No. 46. On September 11th, 2015, Runnels pled guilty to violating plaintiff's civil rights by dropping plaintiff face first on the ground while plaintiff was restrained and not posing a threat to Runnels or others.

Those are the stipulated facts, Your Honor. In addition to the evidence adduced during the first phase of the trial, that is all the evidence on plaintiff's behalf and plaintiff rests.

THE COURT: Thank you.

Mr. Cutler.

DEFENDANT'S EVIDENCE ON PUNITIVE DAMAGES

MR. CUTLER: Your Honor, at this time we call Timothy Runnels to the stand.

THE COURT: Mr. Runnels, would you come back up,

775

1    please, sir.

2    TIMOTHY RUNNELS, being sworn by the courtroom deputy,

3    testified:

4    DIRECT EXAMINATION BY MR. CUTLER:

5    Q      For the record would you state your name, please.

6    A      Timothy Runnels.

7    Q      Mr. Runnels, some of this may be repetitive.  I'll try

8    to make it as less repetitive as I can, but we do need to get

9    certain things on the record.

10            You pled guilty to dropping Bryce Masters on his

11   face, correct?

12   A      Yes, sir.

13   Q      And you pled guilty in federal court?

14   A      Yes.

15   Q      And you are currently serving time?

16   A      Yes.

17   Q      And you received a four-year prison sentence for that,

18   correct?

19   A      Yes.

20   Q      How much money do you make in prison?

21   A      Currently none.

22   Q      And why is that?

23   A      Prison doesn't pay very well unless you get some jobs,

24   and still it's very minimal.

25   Q      So do you have a job in prison?

776

```
 1    A      Not currently.

 2    Q      Have you had one since you've been there?

 3    A      I have had one, yes.

 4    Q      What was that job?

 5    A      The most pay the job received was $20 a month.

 6    Q      And how long did you have that job?

 7    A      I had it for about six months prior to being

 8  transferred here for this proceeding.

 9    Q      And your transfer here to this proceeding caused you to

10  lose that job?

11    A      Yes.

12    Q      So you made about $180 in that job?

13    A      It sounds appropriate.

14    Q      You've had no other jobs since you've been serving your

15  time?

16    A      No.

17    Q      What's a typical day like for you?

18    A      Wake up, go to breakfast.

19    Q      About what time do you wake up?

20    A      Six o'clock.

21              MR. PRESLEY:  Objection; relevance.

22              THE COURT:  Overruled.

23    A      Six o'clock.

24    Q      (By Mr. Cutler)  You go to breakfast?

25    A      Go to breakfast.  They have some different classes you
```

```
 1    can go to.  Go to lunch, go to the yard, do some running, come

 2    back, go to dinner, and then usually reading in the evenings,

 3    reading or church.

 4    Q      You mentioned they have classes you can go to.  Are you

 5    taking any classes?

 6    A      Yes, sir.

 7    Q      What classes are you taking?

 8    A      Upholstery class.

 9    Q      Upholstery?

10    A      Yes, sir.

11    Q      Have you taken any other classes since you've been

12    there?

13    A      Yes, sir.

14    Q      What other classes have you taken?

15    A      I participated in a welding class and an HVAC class.

16    Q      HVAC, heating, ventilation, and air conditioning?

17    A      Yes, sir.

18    Q      Okay.  Do you receive any kind of certificates for

19    those classes or you just take them?

20    A      You get a certificate of completion.

21    Q      Do you yourself own any assets?

22    A      No, sir, just my truck.

23    Q      Okay.  Have you learned your lesson from dropping Bryce

24    Masters?

25    A      Yes, sir.
```

```
 1    Q      Through this process we've learned a lot about Tasers.

 2   We've learned a lot about avoiding chest shots and when

 3   practicable and when possible and all the stuff we heard about

 4   Tasers.  Through this process, this court process, this

 5   lawsuit, have you become more acquainted with the use of a

 6   Taser?

 7    A      Absolutely.

 8    Q      And have you become more acquainted with the policies

 9   and procedures related to using a Taser?

10    A      Yes, sir.

11    Q      Now, you went to college and you were a criminal

12   justice major, correct?

13    A      Yes.

14    Q      And that was with the intent to becoming a police

15   officer?

16    A      Correct.

17    Q      Will you ever be able to serve as a police officer

18   again?

19    A      No, sir.

20    Q      And that's because of your pleading guilty to dropping

21   Bryce Masters onto the ground?

22    A      Correct.

23    Q      Career in law enforcement is over?

24    A      Yes, sir.

25    Q      How old are you?
```

779

1   A       Thirty-five.

2   Q       As a convicted felon, are there certain things that you

3   will never be able to do in life?

4   A       There's a lot of jobs I won't be able to obtain.  I was

5   an avid hunter with my father since the age of eight.  I won't

6   be able to do that.

7   Q       Why not?

8   A       Because of restrictions with certain weapons.

9   Q       What else?

10  A       I won't, as far as I know, will be able to participate

11  in voting rights.  I'm sure there's multiple avenues, but just

12  the struggle as far as obtaining security and financial future

13  for my family once I am able to return is going to be more

14  difficult.

15  Q       Now, part of this punitive damage thing is have you

16  learned your lesson, to deter you from like conduct in the

17  future.  You had no intent to harm Bryce Masters, did you, with

18  respect to the Tasing?

19  A       No, sir.

20  Q       Even with the drop to the ground, you weren't intending

21  to harm him, were you?

22  A       No, sir.

23  Q       You admit you shouldn't have dropped him to the ground?

24  A       Correct.

25  Q       And you learned your lesson from that?

```
 1   A       Yes, sir.

 2   Q       Even with the Tasing, you felt what you did at the time

 3   was appropriate, correct?

 4   A       Yes, sir.

 5   Q       Obviously in hindsight you wish it would have been a

 6   better outcome?

 7   A       I wish the outcome would have been drastically

 8   different, yes.

 9   Q       Do you have plans to take any other classes while you

10   are incarcerated?

11   A       I try to take as many classes as I can to help pass

12   time.  The reason is I try to stay as active and involved as

13   possible to try to gain as much knowledge as I possibly can to

14   have any hope and gain a future for myself and my family.

15   Q       You talked about your family.  Are you married?

16   A       Yes, sir.

17   Q       How many children do you have?

18   A       Two.

19   Q       Do you get to see your kids very often?

20   A       About once every month or two.

21   Q       And I mentioned before, you are incarcerated out of

22   state, correct?

23   A       Correct.

24   Q       Currently you're local because of the trial; but when

25   the trial's over, you will go back to where you were out of
```

781

```
 1   state, correct?

 2   A       Correct.

 3   Q       And when I say "out of state," we're not talking about

 4   Kansas or Illinois or -- I mean, you're out of state?

 5   A       Correct.  I'm over eight hours away.

 6   Q       So you're in a situation where you just don't get to

 7   see your family every weekend?

 8   A       No, sir.

 9   Q       Since all this has happened, have you lost any friends?

10   A       I've lost a few, yes.

11   Q       You do have some friends that are still in your corner?

12   A       Yes, sir.

13   Q       When I say "in your corner," they don't necessarily

14   support what you did but they support you as a person?

15   A       Yes, sir.

16   Q       You have some family members that may be acting

17   differently towards you?

18   A       I could say so, yes.

19   Q       And those relationships are broken?

20   A       To a degree, yes.

21   Q       Is there anything that you would like to tell the jury

22   about any remorse or how you feel about what happened to Bryce

23   Masters?

24   A       I can tell you I had no intention of harming him.  I

25   wish the outcome would have been different.  I wish my actions
```

```
 1    could have been better.  At the time I was responding to what I
 2    thought was right.  If things could have changed, outcome could
 3    have changed, I would gladly take that option, but I can't and
 4    it's my responsibility.  It's out of my hands.
 5              MR. CUTLER:  No further questions, Your Honor.
 6    CROSS-EXAMINATION BY MR. PRESLEY:
 7    Q      Mr. Runnels, when are you due to be released?
 8    A      I believe my outdate is August 2020, I think.
 9    Q      There was a time you were employed as a police officer
10    with the City of Independence back in September of 2014; is
11    that correct?
12    A      Yes.
13    Q      And then you were terminated by the city as a police
14    officer; is that true?
15    A      Yes.
16    Q      What did you -- what was your next employment after
17    that?
18    A      I worked with my family at a plastics business.
19    Q      And did you continue to work with your family in the
20    plastics business until you were sentenced and reported to the
21    Bureau of Prisons?
22    A      Yes, sir.
23    Q      Thank you.
24              MR. PRESLEY:  That's all.
25              THE COURT:  Mr. Cutler?
```

1          MR. CUTLER:  Nothing further, Your Honor.

2          THE COURT:  Thank you, Mr. Runnels.

3          (Witness excused.)

4          MR. PRESLEY:  Anything further?

5          MR. CUTLER:  No further evidence, Your Honor.

6          MR. PRESLEY:  Just by way of rebuttal, I would

7    make -- I would reinstitute the offer that I made previously,

8    Your Honor, as rebuttal evidence.

9          THE COURT:  All right.  The record remains the same.

10          MR. PRESLEY:  Thank you, Your Honor.  Nothing

11   further.

12          THE COURT:  All right.  Ladies and gentlemen, I have

13   one final instruction to give to you that I'm going to need

14   just a brief amount of time to get it printed up and finalized.

15          I'd like for you to take a ten-minute break.  Keep

16   the instruction I've given you previously in mind, and please

17   be back in the jury room in ten minutes, at five minutes after

18   eleven.

19          Thank you.

20          (The following proceedings were had in the courtroom

21   out of the presence of the jury:)

22          THE COURT:  You can be seated.

23          You want a few minutes to look at Instruction 21?

24          MR. PRESLEY:  No.  I just need a verdict form.

25          THE COURT:  Do you have any record you want to make

784

1   on Instruction 21, Mr. Cutler, or have you had a chance to look

2   at it?  I can come back in five minutes if you want me to.

3   Rhys can get you the verdict forms.

4           MR. PRESLEY:  I do need to make just a quick record.

5           THE COURT:  Okay.

6           MR. PRESLEY:  So, as I stated at the close of

7   defendant's evidence, plaintiff offered rebuttal evidence of

8   the same offer of proof that was made that the plaintiff would

9   have made in his case in chief at this phase of the trial.

10          There is no evidence in this case that the defendant

11  will have to pay one penny of any of the judgments entered so

12  far or that could be entered in the future, and under Ballinger

13  versus Gascosage Electric Co-op, a Missouri banc case, the

14  closing argument that plaintiff was able to make in that regard

15  under those circumstances was that very statement.  And also

16  under Amador versus Lea's Auto Sales & Leasing, 916 S.W.2d 845,

17  where the defendant placed the financial condition of his

18  client at issue, I believe that it would be appropriate for us

19  to, again, reference the fact that there's been no evidence

20  that he is personally liable for any of the judgments rendered.

21          THE COURT:  All right.  That is considered as an

22  offer of proof.

23          Do you have any objection to considering that as an

24  offer of proof, Mr. Cutler?

25          MR. PRESLEY:  It's really not an offer of proof.  It

1    just goes to argument, Your Honor, but I appreciate the Court's

2    thinking on that.  Just as a matter of courtesy to Keith and

3    the Court, I felt like I should let the Court know that is what

4    I intend to argue.

5              THE COURT:  I appreciate that.  That argument will

6    not be permitted, and you are not to make that argument to the

7    jury.

8              So I'll be back in five minutes to see if we have

9    any record on the instructions; and if not, we will proceed.

10             (Recess taken at 11:03 a.m.)

11             (The following proceedings were had in the courtroom

12   out of the presence of the jury:)

13             THE COURT:  Thank you.  You can be seated.

14             Mr. Cutler, do you have any record on the

15   instructions at this phase?

16             MR. CUTLER:  Yes, sir, Your Honor.  With respect to

17   Instruction No. 21, and in an earlier iteration of the

18   instruction the Court distributed on Wednesday morning the

19   Instruction 21 included the definition of maliciously as

20   reflected in the model instruction 4.24.  Maliciously means

21   intentionally injuring another without just cause.  I see in

22   the Instruction 21 that has been presented this morning that

23   that definition has been taken out.

24             THE COURT:  You want it back in?

25             MR. CUTLER:  Yes, sir.

```
 1              THE COURT:  Mr. Presley?

 2              MR. PRESLEY:  It does refer to intentional malice,

 3   so I think the 4.72 has been modified appropriately to include

 4   that.

 5              THE COURT:  All right.  Let's put the definition of

 6   malicious back in.

 7              How much time do you want for argument, Mr. Presley?

 8              MR. PRESLEY:  Five minutes, please.

 9              THE COURT:  Mr. Cutler, how much time do you want?

10              MR. CUTLER:  Am I limited to what the plaintiff

11   requests?

12              THE COURT:  No.  But if you want more time than he

13   gets and I give you more time, then he gets more time too.

14              MR. CUTLER:  I would like ten minutes, Your Honor.

15              THE COURT:  Okay.

16              MR. PRESLEY:  I'll just do seven and three, Your

17   Honor.

18              THE COURT:  Okay.  You want any kind of a warning?

19              MR. PRESLEY:  I won't need it.  Thanks.

20              THE COURT:  Mr. Cutler, do you want a warning?

21              MR. CUTLER:  Yes.  A three-minute warning, Your

22   Honor.

23              THE COURT:  Three-minute.  All right.

24              For your information, we now added a definition of

25   malicious to Instruction 21.
```

1        Any further record on that you'd like to make, Mr.

 2    Presley?

 3            MR. PRESLEY:  None, Your Honor.

 4            THE COURT:  And Mr. Cutler?

 5            MR. CUTLER:  No, sir.

 6            THE COURT:  All right.  Thank you.

 7            Lisa, would you bring the jury back in.

 8            (The following proceedings were had in the presence

 9    of the jury:)

10            THE COURT:  Thank you, ladies and gentlemen.

11    Everyone can be seated.

12            Ladies and gentlemen, here is my final instruction

13    and appropriate verdict form for this phase of the trial.  I

14    begin with Instruction No. 21.

15            (The Court reads Instruction No. 21 to the jury.)

16            THE COURT:  Mr. Presley, you may begin with your

17    closing argument.

18            MR. PRESLEY:  Thank you.

19            If it please the Court, Your Honor and counsel.

20        PLAINTIFF'S CLOSING ARGUMENT ON PUNITIVE DAMAGES

21            MR. PRESLEY:  During the actual damage phase of the

22    trial, I was able to provide you with some guidance as best I

23    know how as to Bryce's actual damages.  When it comes to

24    punitive damages, you are to be guided by Instruction 21.  I

25    can help you with the content and the framework for deciding,

1    but I can't give you an amount.  There's no amount that I can

2    give you that your collective wisdom and consciousness could

3    supersede.  You're the bosses here and because of that, we

4    leave it to your sound discretion in determining an amount,

5    because anything I could say would not be the voice of the

6    community.  You are the voice of our community.  You are the

7    voice that rings out throughout this nation when it comes to

8    protecting the rights and liberties that our citizens are

9    entitled to under the Constitution and the Fourth Amendment to

10   the Bill of Rights.

11            So let's look at some of the factors that you are to

12   consider.  No. 1 is how reprehensible or just how bad was the

13   defendant's conduct?  And so when you look at the disregard for

14   human health and safety, that's a different analysis for the

15   different findings that you made in the verdict form.  You have

16   to look at the reprehensibility of someone who takes an

17   unconscious 17-year-old with his hands handcuffed behind his

18   back and drops him to the pavement, and you have to decide how

19   are we going to send a message, not just to the defendant --

20   let's go to the bottom, Matt -- not just to deter the defendant

21   but others from similar wrongful conduct in the future.  And

22   that's the importance of your mission here.  That's really

23   the -- as I told you in the actual damage phase, this is the

24   opportunity that if you found there was liability for punitive

25   damages, this would be your opportunity to speak out, and

1   that's the opportunity to be presented to you now.

2           So we also have to look at the Tasering; and when

3   you do, consider paragraph 2.  How much harm did the

4   defendant's wrongful conduct cause the plaintiff and could

5   cause the plaintiff in the future?  This is where you have the

6   chance to put to bed forever the Dr. Vilkes of the world who

7   come in and say the Taser didn't cause this.

8           There's just no doubt based on the evidence we see

9   that the Taser caused Bryce's cardiac arrest.  Your findings

10  confirm that.  And now this is your opportunity to say Taser

11  misconduct is not going to be tolerated by the citizens of this

12  state.  Just as juries must staunchly defend the rights of

13  responsible officers to use force in appropriate fashions in

14  appropriate circumstances, this is your opportunity to speak

15  with a collective voice and to send the message to everyone,

16  everyone in Independence, everyone in Kansas City, everyone in

17  our state that if you are going to perform acts like we've seen

18  in this case and all of the evidence that was before you in

19  Phase 1, that this is what you have to lose, and that's the

20  message that deters others from this similar conduct.  It's not

21  until jurors like you speak out.

22          Independence didn't do it.  They chose not to

23  sustain it.  The criminal court in the federal criminal charge

24  never got to that point because of Tim Runnels' guilty plea.

25  You are the only jury who has had the opportunity to weigh that

1    evidence and to see the actual conduct and to make a

2    determination on liability for punitive damages, and it will be

3    a hollow victory to find the defendant in this case liable for

4    punitive damages and not express fully the reprehensibility and

5    the harm and the reckless disregard for the safety of others

6    his conduct caused.

7              Thank you.

8              THE COURT:  Mr. Cutler.

9              MR. CUTLER:  Thank you, Your Honor.

10         DEFENDANT'S CLOSING ARGUMENT ON PUNITIVE DAMAGES

11             MR. CUTLER:  Ladies and gentlemen, you all are

12   familiar with the phrase, "What do you give a person who has

13   everything?"  The converse of that is how do you punish

14   somebody who doesn't have anything, who has nothing, who's had

15   everything taken away from him?  What kind of punishment do you

16   impose on that person?  And that's the question that you all

17   will have to answer.

18             We've talked about he's already given up his

19   liberty.  He's already given up the life that he knew.  He's

20   already given up the career that he went to school for, that he

21   studied and trained for.  That is forever gone.  So now how do

22   you punish a man who has given up his liberty and given up his

23   career, given up familiar relationships?  He's given up certain

24   other job prospects.  He's given up the right to vote.  How do

25   you punish a man who's given up all that?

1    When you look at the jury instruction, there are a
2  lot of things that you have to look at.  Mr. Presley talked to
3  you about some of them.  Mr. Presley talked about some of them,
4  but I want to go through what the instruction says.  How
5  reprehensible defendant's conduct was.  Now, you heard the
6  testimony about why Officer Runnels did what he did.
7  Particularly with respect to the Taser.  Again, with the drop
8  to the ground, he admitted that.  He's serving his time for
9  that.

10    Whether the harm suffered by the plaintiff was
11  physical, economic, or both.  As relates to the Taser, you've
12  already rendered your verdict on what you feel he was
13  compensated for for any physical, economic harm.  I don't want
14  to go back and reargue that, but you have to consider that.

15    Whether there was violence, deceit, or intentional
16  malice.  With respect to the Taser, you heard the testimony
17  from Officer Runnels he did not intend to harm Bryce.  The
18  Taser is supposed to act a certain way.  It didn't act that
19  way.  It's supposed to neuromuscularly incapacitate a person.
20  That's all it's supposed to do.  It isn't suppose to cause
21  cardiac arrest.  It isn't supposed to cause brain damage.
22  That's not what the training was.  So there was no intent for
23  Bryce Masters to end up with a brain injury.

24    Reckless disregard for human safety or health.
25  Again, officers all across the country use Tasers.  So the use

of the Taser in and of itself is not a reckless disregard for
human health and safety.

Whether the officer's conduct that harmed the
plaintiff also posed a risk of harm to others.  There are no
others involved.  There's nobody involved but Bryce Masters and
Timothy Runnels.

Whether there was any repetition of the wrongful
conduct.  No, there wasn't.  This is not a situation where
Officer Runnels was going around Tasing people causing brain
damage.  This is the one and only time he ever deployed his
Taser in the field.

Past conduct of the sort that harmed plaintiff.
Again, this is the one and only time he ever deployed his
Taser; and even if he had deployed his Taser more than one
time, this is not the outcome that Tasers are designed to
produce.  They are not designed to produce brain injury.  They
are not designed to produce someone to go into cardiac arrest.

Now, what amount -- I'm going down to No. 3.  What
amount of punitive damages is needed considering the
defendant's financial condition?  That's the question.  How do
you punish a man financially who has nothing?  Do you give him
a $100,000 punitive damage award?  He doesn't have $100,000.
He doesn't have $150,000.  He doesn't have $10,000.  How do you
punish somebody who doesn't have anything financially?  There's
no reason to impose a huge financial burden on someone who's

1   already given up his liberties, already in prison, who's

2   already serving time for what he's done.

3          To deter the defendant and others from similar

4   conduct.  Again, Tasers aren't designed to do this.  So any

5   amount you award him is not going to stop an officer from

6   Tasing a suspect who's resisting arrest.  That's how officers

7   are trained.  That's what the Taser is designed to do.  You

8   definitely don't have to worry about deterring Mr. Runnels

9   because he's never ever going to work in law enforcement again.

10  He's not going to be able to possess a Taser or firearm or

11  anything of that nature.  So in terms of deterring him, money's

12  not it.  It's already been done.

13         And then finally down at the bottom in terms of

14  malice and maliciously.  The key word to all of this is

15  intentional.  In your compensatory damage award that you

16  awarded earlier, those were based on what Bryce's damages are.

17  It didn't factor in Officer Runnels' intent.  It only focused

18  on what Bryce's damages were.  You all determined his damages

19  were $5 million for the Taser and $50,000 for the drop to the

20  ground.  That's what you determined his damages were.  But

21  those weren't based on Officer Runnels' intent.  That was

22  strictly what Bryce's damages were.

23         Your punitive damages award, however, that you are

24  about to go deliberate on, that is solely dependent on Officer

25  Runnels' -- not solely, I'm sorry.  That is dependent in part

```
1    on Officer Runnels' intent.  Did he intend for this outcome to

2    happen?  Did he Tase Bryce knowing that he's going to end up

3    with a brain injury?  Did he Tase Bryce knowing he was going to

4    end up in cardiac arrest?  The evidence of that is absolutely

5    no.  He did not intend any of this.  And so when you punish

6    somebody for their intentional conduct, that's one thing.  When

7    you punish somebody for an unforeseeable bad outcome, that's

8    something completely different.

9              THE COURT:  Three minutes, Mr. Cutler.

10             MR. CUTLER:  Thank you, Your Honor.

11             And so what I would suggest to you in terms of what

12   amount would be an appropriate amount for punitive damages, you

13   know, for the top line we're talking about the Taser and for

14   the bottom line we're talking about the drop.  Your

15   compensatory damage award with respect to the Taser was $5

16   million; but, again, that's Bryce's damages.  In terms of what

17   will punish and deter Officer Runnels for conduct he never

18   intended to happen, had no way of knowing it would happen, you

19   have to come up with an amount that you think will punish him,

20   and I'm going to suggest the amount of $100,000.  Again, he's

21   probably never going to be able to pay that.  He's probably

22   never going to be able to earn that.  I don't know when he gets

23   out of prison, maybe he will get a nice job.  We don't know

24   that.  But in terms of what he has now.  He may or may not be

25   able to pay that, I don't know.  But I think given his intent
```

1    that he did not intend for this to happen, this was an outcome

2    that he did not foresee and no one could have foreseen, then I

3    think that's a fair amount.

4           With respect to the drop, you all awarded

5    compensatory damages of $50,000.  I think an appropriate amount

6    to punish Officer Runnels for that would be $10,000.  And when

7    I say I think it's an appropriate amount, I obviously don't

8    think any amount will serve to punish him, deter him because

9    it's already been done.  He's already been deterred from this

10   conduct.  He's never going to do it again for a variety of

11   reasons that we already talked about.  But if you decide you

12   need to assess any amount to him, I mean the Verdict D gives

13   you the option of writing none.  You can write none if you want

14   to.  You can write zero.  You can write $1,000.  You can write

15   $5,000.  It also gives you the option of none.  So I'm not

16   suggesting about writing numbers in here that you have to give

17   him -- award anything for damages, but if you do -- Mr. Presley

18   said he wasn't going to give you any guideline.  I am giving

19   you this guideline; and if you decide that you are going to

20   award punitive damages, then I would suggest amounts not

21   exceeding the amounts that I've shown you.

22          As before, ladies and gentlemen, thank you very much

23   for your time and attention.

24          MR. PRESLEY:  If we may approach.

25          THE COURT:  Yes.

1           (Counsel approached the bench and the following

2    proceedings were had:)

3           MR. PRESLEY:  Mr. Cutler, argued how do you punish a

4    man?  He argued that this places a huge financial burden on

5    him.  He continued to argue that he probably can't pay a

6    100,000 or 10,000, and that specifically opens the door to the

7    fact that he is not obligated to pay any of these judgments

8    until the amount exceeds the available indemnity limits.  Now,

9    I'm not asking to argue the insurance.  I am asking simply to

10   argue that it's whether or not he can pay it or not.

11          THE COURT:  Well, there's certainly other factors

12   beyond his financial condition.  You can argue those factors,

13   but I'm not going to let you suggest his financial condition is

14   not a consideration.

15          MR. PRESLEY:  That's not my intent.  My intent is to

16   simply address the very argument that he can't pay it, because

17   that's not what the case is about, and there's no evidence that

18   he's required to pay it; and as such, I should be able to say

19   that there's no evidence that he's required to pay this.

20          THE COURT:  I'm not going to let you argue that.

21   You cannot argue that.

22          MR. PRESLEY:  That's my record.

23          THE COURT:  All right.  Your request is denied.

24          (The proceedings returned to open court.)

25          MR. PRESLEY:  If the Court please, Your Honor.

1    THE COURT:  Mr. Presley.

2    PLAINTIFF'S REBUTTAL CLOSING ARGUMENT ON PUNITIVE DAMAGES

3    MR. PRESLEY:  Briefly, ladies and gentlemen, the

4    important thing about verdicts, just as the verdicts you've

5    rendered in A, B, and C, is that they are now public.  They are

6    now a part of this court's file.  This courthouse is open to

7    everybody, and they're a permanent record of -- and they are

8    carved in stone and there's nothing that can change that, and

9    that's the opportunity that you have in Verdict D.

10    So when you look at the issues and the elements of

11    damage and are guided by Exhibit 21, I would simply suggest to

12    you that if he can't pay 100, he can't pay 10, then he can't

13    pay whatever you -- message you choose to send to others to

14    deter them from this similar conduct, and that is the important

15    mission that you have.

16    Thank you very much.

17    THE COURT:  All right.  Ladies and gentlemen, here's

18    my final instruction and Verdict Form D, and Lisa will take you

19    into the jury room.  Again, same rules apply as previously.  If

20    you want to take a break, let Lisa know how long you're going

21    to break for, whether it's a short break or if you want to take

22    a little longer break for lunch, let her know.

23    Again, you can only discuss this case when all eight

24    of you are present in the jury room, and you cannot discuss the

25    case outside the jury room.  I mean, if all eight of you decide

```
 1   to go to lunch down in the Northview or whatever, the cafe in
 2   the basement of the courthouse, you can't talk about it outside
 3   the jury room.
 4              Don't read, view, or listen to any media reports of
 5   the case.  Don't do any research.  Don't do any social media.
 6   Don't talk to anyone other than yourself until all eight of you
 7   are present in the jury room.
 8              Thank you, ladies and gentlemen.
 9              (The case was given to the jury at 11:40 a.m. on
10   Friday, December 14, 2018, and the jury retired to their room
11   to deliberate on their verdict.)
12              (The following proceedings were had in the courtroom
13   out of the presence of the jury:)
14              THE COURT:  All right.  We'll let you know what we
15   hear.
16              MR. CUTLER:  Thank you, Your Honor.
17              (A recess was taken.)
18              (The following proceedings were had in the courtroom
19   out of the presence of the jury:)
20              THE COURT:  Thank you.  Everyone can be seated.
21              I presume you've been told that the jury has advised
22   they have a verdict at this stage.
23              So, Lisa, would you please bring them in.
24              (The jury returned in open court with their verdict
25   at 12:35 p.m.)
```

```
1                THE COURT:  Thank you.  Everyone can be seated.

2                Again, Ms. Tischer, has your jury reached a verdict

3    at this stage, ma'am?

4                THE FOREPERSON:  Yes, Your Honor.

5                THE COURT:  Thank you.  Would you please hand the

6    verdict form to Ms. Mitchell for me.

7                Thank you.

8                Verdict D.  "We assess punitive damages for the

9    conduct submitted in Instruction No. 12 against defendant

10   Timothy Runnels as $500,000.

11               "We assess punitive damages for the conduct

12   submitted in Instruction No. 16 against defendant Timothy

13   Runnels as $1 million."

14               Again, the verdict form is signed by Ms. Tischer and

15   dated today.

16               Mr. Presley, do you care to have the jury polled?

17               MR. PRESLEY:  Do not, Your Honor.

18               THE COURT:  And, Mr. Cutler, do you?

19               MR. CUTLER:  Yes, sir.

20               (Each juror, upon being asked, "Is this your

21   verdict?" responded in the affirmative.)

22               THE COURT:  All right.  Well, ladies and gentlemen,

23   that concludes your service in this case; and, again, I would

24   like to thank you very much for taking the time out of your

25   lives and schedules to perform this important civic
```

1  responsibility and function.

2         Beyond that, you've been a very good group to work

3  with.  You've been very cooperative.  I always rely upon what

4  Lisa tells me about the nature of the people that she's dealing

5  with, and she's appreciated the group that you all are, your

6  friendly and cooperative nature about things.

7         I know that these are difficult situations for

8  people.  It's a tough deal.  We ask a lot of people to come in

9  and make these kind of decisions that are outside the norm of

10  your life for most everyone, and we appreciate the difficulty

11  that that presents for you and the fact that you're willing to

12  undertake this task and to perform your responsibility.

13         As there has been some mention about previously,

14  there has been some media attention to this case.  You're all

15  free now to talk to whoever you would like to.  You,

16  additionally, have no obligation to talk to anyone.  It's up to

17  you.  The lawyers may want to talk to you now or in the future.

18  You may have some contact from someone else.  It's totally up

19  to you, ladies and gentlemen, as to whether you want to discuss

20  anything with anyone or not.  Obviously you can talk to your

21  family about it, your friends.  You can call your employers and

22  tell them you can come back to work Monday, if you want to.

23         I also have some certificates which is a very, very

24  small token of my appreciation and everyone's appreciation for

25  your service here.  If anyone needs to take it back to an

1   employer to verify your service in this case, it will serve

2   that purpose as well.

3          So thank you very much.  I don't know if you've had

4   an opportunity, don't have any windows back there, but it looks

5   like it's going to be a pretty nice afternoon this afternoon,

6   so I hope you can get out and enjoy a little bit of that.

7          Have a good weekend and thank you very much, ladies

8   and gentlemen.  You are all excused.

9          (The following proceedings were had in the courtroom

10  out of the presence of the jury:)

11         THE COURT:  Well, I would like to thank the

12  attorneys in the case for their hard work, for their courtesy,

13  as I said when we met earlier, towards each other and towards

14  me.

15         You all did an excellent job of representing your

16  respective interests in the case.  There are lots of issues

17  that came up and there are lots of issues that still exist, but

18  the jury has spoken in the case, and I appreciate the respect

19  that you all have exhibited towards them and their role in

20  recognition of the difficulty of the task that was presented.

21         It's a very unfortunate case all the way around, and

22  I think we all recognize that and we have great sympathy and

23  concern for all the parties in the case; but as difficult as

24  this process was, it's been made much easier by the

25  professionalship and the kind of courtesy that you, Mr.

```
 1    Presley, and, Mr. Cutler, have exhibited.  So for that I thank

 2    you.

 3               MR. PRESLEY:  Thank you, Your Honor.

 4               MR. CUTLER:  Thank you, Your Honor.

 5               (Adjournment)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

803

CERTIFICATE OF OFFICIAL REPORTER

I, Katherine A. Calvert, Federal Official Court Reporter, in and for the United States District Court for the Western District of Missouri, do hereby certify that the foregoing is a true and correct transcript of the stenographically reported proceedings in BRYCE E. MASTERS, Plaintiff, vs. CITY OF INDEPENDENCE, MISSOURI, et al., Defendants, No. 16-CV-01045-GAF.

Dated this 19th day of July, 2019.

_____
KATHERINE A. CALVERT, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER

804